No. 12,801.

Snowden *v.* Taggart.

(17 P. [2d] 305)

Decided November 14, 1932.   Rehearing denied December 29, 1932.

Mr. John M. Keating, Mr. Glenn L. Daly, Mr. John W. Shireman, for plaintiff in error.

Mr. Frank D. Taggart, for defendant in error.

*In Department.*

Mr. Chief Justice Adams delivered the opinion of the court.

The parties are aligned in this court as at the trial; plaintiff in error will be referred to as plaintiff and defendant in error as defendant. Plaintiff seeks to recover damages in an action in tort against defendant for fraudulent misrepresentations. The trial court sustained a motion for nonsuit and dismissed the action. Plaintiff brings the cause to this court for review on writ of error.

The substance of the complaint, in so far as it affects the above named parties, is that the Gove County Telephone Company was a public utility corporation, organized under the laws of the state of Kansas, doing business in said state; that defendant was the president of the company; that while so acting he issued and placed in circulation certain bonds purporting to be first mortgage twenty year six per cent gold bonds of the company and signed by him as president of the company; that plaintiff exchanged property of the value of $13,000 for such bonds of the par value in the same amount; that he afterwards discovered that the bonds were not a lien on the properties of the company, but on the contrary were void under the laws of the state of Kansas, particularly because the company or defendant did not comply with the statutes of that state relating to public utilities. Plaintiff further alleged that defendant induced the trustee under the bond issue to make an endorsement on the bonds that they were secured by first mortgage or deed of trust, but in fact none was executed; that defendant made the representations with knowledge of their falsity, with intent to deceive, and for the purpose of inducing plaintiff and the public at large to act thereon; that plaintiff was ignorant of the falsity of the representations, and on the contrary he believed them to be true and acted thereon to his injury. Another defendant, H. Morton, secretary of the telephone company, was named in the complaint, but was not located or served, and the

case went to trial against Taggart alone. A demurrer to the complaint was overruled. Defendant answered and admitted the execution of the bonds in question, admitted the existence of the Kansas statute, but denied that the bonds were void thereunder, and alleged that the bonds *when executed* (our italics), were valid obligations of the corporation, secured by a first mortgage or deed of trust, duly made, executed and delivered to the trustee named therein. In general, plaintiff's other allegations were denied; the answer also contained special defenses not germane to this opinion.

On cross-examination under the statute (section 6570, C. L. 1921) defendant reiterated the assertions and admissions contained in his answer. He admitted that the Public Utilities Act of the state of Kansas was not complied with while he was president of the telephone company, although there was some discussion about it. It further appears from defendant's testimony that he entered into negotiations with former owners of the capital stock of the telephone company to acquire its control. It is not clear how far the negotiations progressed, or whether defendant performed his part of the agreement. As stated by the trial court, ''Something took place, not disclosed by the evidence, between defendant and a former president of the company.'' This apparently refers to a Mr. Ahn, to whom defendant delivered the bonds, together with a mortgage or deed of trust, in Denver, Colorado, according to defendant's testimony. The mortgage or deed of trust was not recorded; defendant says that he delivered the bonds to Ahn to do with them as he saw fit. Defendant further testified that he demanded the return of the bonds, but that Ahn refused. The record fails to show why defendant demanded them back, what, if anything, he offered for them, whether he was entitled to their return, or why Ahn declined. Defendant also testified that he afterwards ''resigned from the Gove County Telephone Company,'' and ''I wasn't entitled to them [the bonds] after my resignation, in any

event.'' Defendant admits that the bonds are now worthless, but declared, ''I made it a point to tell everybody, whenever I got the chance, that they were without any value.'' Plaintiff, however, discovered the facts too late; he acquired the bonds, or some of them, at a cost of $13,000 in property, in the course of a business transaction in Colorado with one Sampson, not a party to the suit. Plaintiff's testimony is to the effect that he purchased the bonds in reliance upon the representations contained therein, without notice or knowledge that they were false, and in the belief that they were true. It was also shown that defendant obtained the endorsement of the trustee on the bonds that they were secured. Other essential allegations of the complaint were either admitted by defendant or fully proven by plaintiff.

1. In the face of defendant's admissions that the bonds are invalid and unsecured, no proof of the fact is required. He relies, however, upon his unsupported testimony that the bonds were valid *when issued,* but offers no further explanation, and his reasons are inscrutable, either to lawyer or layman. His statement represents only his own conclusions. It is not as if the issue had been bona fide originally, but had subsequently depreciated in value, or become worthless for some unforeseen reason; the bonds and mortgages or deed of trust, if there was one, never attached to the corpus of the telephone company. We are not so credulous as to suppose that the paper was good in the first place, but lost its virtue in the mere process of negotiation or when defendant parted with it. His flimsy pretext lacks technique; it is too fantastic to imagine that if there ever was a valid lien, it vanished into the air, and disappeared no one knows where, when put to the test. It is self-evident that defendant's testimony is contrary to reason; but even if this were not so, the fact that plaintiff made a prima facie case causes us to say that the nonsuit was improperly granted.

2. We must conclude that the bonds are void and

were void ab initio; further, that they are not, and never were, secured by a lien on the property of the telephone company, or at all. One reason for this determination is that the bonds were uttered in defiance of, or in total disregard of, the Public Utilities Act of the state of Kansas. Sections 25 and 26, chapter 238, Kansas Session Laws of 1911, sections 66-125 and 66-126, Revised Statutes of Kansas, 1923. Its requirements are more than formal. Section 66-125 calls for an application and certain statements to be made to the public utilities commission of that state, as a condition precedent to the issuance of bonds of this nature and paper of other specified character by a common carrier or public utility. The act also requires a certificate to be obtained from the commission that the statements in the application have been ascertained to be true. Defendant made no such showing, and got no such certificate. The act gives the commission supervisory control; it is plainly in the nature of a visitation, to prevent just such corrupt practices and deception of the public as are here involved. Section 66-125 concludes with the words, "Any issue of stocks, certificates, bonds, notes or other evidences of indebtedness not payable within one year, which shall be issued by such public utility or common carrier contrary to the provisions of this act, shall be void." Section 66-126 makes the violation of the act a misdemeanor, punishable by fine or imprisonment. The commission may refuse to certify an issue of bonds or stock when its refusal is not arbitrary. *Kansas City etc. Ry. Co. v. Public Utilities Commission*, 101 Kan. 557, 167 Pac. 1138. Another decision of the Supreme Court of the state of Kansas which sustains the act is reported in *Spena v. Goffe*, 112 Kan. 693, 212 Pac. 1093.

We do not need to base our determination that the bonds were void ab initio solely upon the fact that the defendant made no showing before the public utilities commission and did not procure its certificate. As indicated, even if the above statute did not exist, it is fairly

deducible from the evidence that the bonds never were secured by a valid lien on the property of the telephone company, or at all, and, to say the least, defendant was precipitate in putting them on the market before they actually were valid subsisting corporate obligations, secured as represented. The fatal results are more expressive than words.

■ 3. We do not hold defendant accountable for a misdemeanor under the Kansas statute, but for his tortious conduct in circulating, or causing to be circulated, fictitious bonds in this state, to the injury and damage of plaintiff. There is no privity of contract between plaintiff and defendant, but the action is not founded upon the contract, nor upon a breach thereof, but upon the tort. *Salmon v. Richardson*, 30 Conn. 360. The bonds were made payable to bearer, and were devised for the very purpose of being passed from hand to hand. We cannot discern any absence of moral turpitude in one who paints a gorgeous picture of a landscape that does not exist, for the purpose of duping the public into its purchase. It would seem strange to find a bond issue spurious from start to finish, and at the same time hold the willful perpetrator thereof free from even civil liability. Defendant's feeble efforts to recant and retrieve the glittering objects of his signature from Ahn, if he really made such attempts, do not exonerate him under the facts of the record. It is difficult to see why defendant should expect Ahn to comply with the former's request, when defendant says himself that he gave the paper to Ahn to do with as he saw fit, and when there is nothing in the record to show that defendant offered the slightest consideration for the return of such paper. Defendant cannot circulate spurious bonds and then wash his hands of the consequences. He should have anticipated the natural result of his act.

■ 4. We emphasize the point stated in 7 R. C. L., p. 504, §486, that "An officer of a corporation does not incur personal liability for its torts solely by reason of

his official character." *Barber v. Meyer,* 86 Colo. 175, 176, 279 Pac. 41; *Scott v. Shook,* 80 Colo. 40, 44, 249 Pac. 259. Continuing the above quotation from R. C. L., "But if he commits a tort, he is liable for it; and it matters not what liability may attach to the corporation for the tort, the officer must respond in damages if called on to do so. This principle is absolutely without exception, and is founded upon the soundest legal analogies, and the wisest public policy. To permit an agent of a corporation, in carrying on its business, to inflict wrong and injuries upon others, and then shield himself from liability behind his vicarious character, would often both sanction and encourage the perpetration of flagrant and wanton injuries by agents of insolvent and irresponsible corporations." 7 R. C. L., p. 504, §486. The text in 14A C. J., pages 175, 176, §1955, is of similar import; we cited it in *Scott v. Shook, supra.* Defendant himself was the chief tort feasor in the instant case, whoever else may have been implicated; it was he who personally conceived the plan and participated in its execution, to the injury of plaintiff. Defendant knew, or should have known, as well or better than anyone else, that the bonds were worthless. It is true, as indicated by the learned trial court, that there was no evidence of a prior encumbrance on the property of the telephone company, but this is of little moment when it is admitted that the bonds have no value and are not secured by any lien at all.

5. Other authorities supporting our conclusion that an officer of a corporation is personally liable for false representations under similar or analogous circumstances will be found in 14A C. J., p. 184, §1960; *Clark v. Edgar,* 84 Mo. 106; *Bank v. Byers,* 139 Mo. 627, 41 S. W. 325; *Stickel v. Atwood,* 25 R. I. 456, 56 Atl. 687; *Fish v. White,* 188 Ia. 57, 175 N. W. 748; 7 R. C. L., p. 506, §489. We do not dispense with the well known requirements of pleading and proof to sustain an action for deceit, as stated in *Kilpatrick v. Miller,* 55 Colo. 419, 422, 135 Pac. 780, and *McNulty v. Durham,* 63 Colo. 354, 361, 167 Pac.

773. The absence of any necessary ingredient of fraud is fatal to the suit *(Nelson v. Van Schaack,* 87 Colo. 199, 201, 286 Pac. 865), but such elements are not wanting in the case before us. The trial court recognized their presence in the complaint, as indicated by the overruling of the demurrer thereto, but we see them also in the evidence and are unable to follow the process of reasoning that led to the granting of the nonsuit. The judgment is accordingly reversed and the cause remanded for further proceedings not inconsistent with this opinion.

MR. JUSTICE CAMPBELL and MR. JUSTICE ALTER concur.