488 P.2d 1135 (1971)
Herbert F. KLOCKNER and Glenn R. Combellick, Plaintiffs in Error.
v.
Dan KESER, d/b/a Fort Carson Motors and Fort Carson Auto Sales, and Kramer Motors, Inc., Defendants in Error.
No. 71-040, (Supreme Court No. 24204.)
Colorado Court of Appeals, Division II.
June 2, 1971.
As Modified on Denial of Rehearing July 7, 1971.
Certiorari Denied September 27, 1971.
John A. Criswell, Englewood, for plaintiff in error Glenn R. Combellick.
*1136 Simon, Eason, Hoyt & Malone, William K. Malone, Englewood, for plaintiff in error Herbert F. Klockner.
Strand, Holst & Hilbert, Edwin Strand, Colorado Springs, for defendant in error Dan Keser, d/b/a Fort Carson Motors and Fort Carson Auto Sales.
Chisen & Pearl, Arden L. Pearl, Denver, for defendant in error Kramer Motors, Inc.
Selected for Official Publication.
DUFFORD, Judge.
This case was transferred from the Supreme Court pursuant to statute.
K.M.S. Co., Inc., d/b/a Denver's Great Western Auto Auction, which we shall refer to as the corporation, was actively engaged in the business of auctioning automobiles from November 1965 until the end of September 1966. In September 1966, Dan Keser, d/b/a Fort Carson Motors and Fort Carson Auto Sales, and Kramer Motors, Inc., whom we shall refer to as the plaintiffs, received checks from the corporation in payment for automobiles which the corporation had sold for the plaintiffs at its auction. These checks were dishonored because of insufficient funds in the corporation's bank account. Plaintiffs brought this action to recover damages for the amount of the checks and interest. The following parties were named defendants in the trial court: The corporation; the corporation's bonding company; the five directors of the corporation, viz., Klockner, Combellick, Sapp, Horner and Starkloff; and one York, who was designated office manager and comptroller of the corporation. All of the directors were stockholders in the corporation. In addition, Klockner, Combellick, and Sapp were officers of the corporation.
Plaintiffs' claim against the individual defendants was based on allegations of fraud and gross negligence. Following a trial to the court, judgments were entered in favor of the plaintiffs and against (1) the corporation, (2) the corporation's bonding company to the extent of its bond, and (3) Klockner and Combellick individually. The action was dismissed as to the remaining defendants. Only Klockner and Combellick have appealed from the judgment and will be referred to herein as the defendants or by name.
The determinative question presented by this appeal is whether the trial court's finding of fraudulent misrepresentations on the part of the defendants is supported by the record.
The following facts are undisputed: The corporation commenced business in November 1965 with a cash reserve of $44,000. Its gross auction sales exceeded $400,000 per month. Sellers of automobiles recieved a check from the corporation on the day their automobiles were auctioned and sold. Buyers frequently paid the corporation with drafts on out-of-town banks. The delay in collecting the draft proceeds (referred to in the testimony as "draft-lag") created recurring cash shortages in the corporation's bank account. Shortly after the corporation commenced business, to provide operating capital for the corporation and to meet the problem of draft-lags, Klockner, Combellick, and Sapp executed personal notes to the bank and the bank credited the amount of the notes to the corporation's account to cover checks to sellers. When the draft proceeds were collected, the bank deposited them in the corporation account and the corporation then issued checks in payment of the directors' personal notes. This manner of financing continued throughout the corporation's existence.
From November 1965 until May 1966, the corporation's books showed a loss every month with the possible exception of May. By the end of May, the corporation's cash reserves had dwindled to $14,000. From June 1966 until the end of September 1966, when the corporation ceased doing business, no financial statements were prepared.
In July, 1966, Combellic, refused to execute any more short term notes. Also, at about this time, efforts were made to sell or lease the corporation or its assets as a *1137 going business. On September 13, 1966, an agreement, approved by the defendants, was entered into between the corporation and the bank, whereby the bank was authorized to apply the corporation's draft proceeds as they were received against the obligations owed by the directors to the bank on their personal notes. Towards the end of August 1966 and through the first 15 days of September 1966, the short-term financing was reduced considerably, and most of the draft proceeds were used to repay the individual notes of the directors. These payments on the directors' shortterm notes and other payments constituted a withdrawal of nearly $24,000 from the corporation's bank account within approximately 20 days prior to September 15, 1966, and totally depleted the corporation's cash reserves. On September 15, 1966, plaintiffs received checks from the corporation, signed by York, in the amount of $20,913.50. On the date the checks were issued, the corporation's account was overdrawn $9,592.66, and on the approximate date the checks were presented for payment, the account was overdrawn in the amount of $41,231.54.
In considering these facts upon appellate review, every inference fairly deducible from the evidence must be drawn in favor of the judgment. Chartier v. Winslow Crane Service Co., 142 Colo. 294, 350 P.2d 1044. Viewed in such light, the record supports the trial court's finding of fraudulent misrepresentations on the part of the defendants.
A person who writes a check impliedly represents that there are sufficient funds in the account upon which it is drawn. Kilbourn v. Western Surety Co., 10 Cir., 187 F.2d 567. In the instant case, although the checks were written by York, the defendants, as directors and officers of the corporation, authorized the corporation to continue doing business until the end of September 1966. Continuing business necessitated, of course, the issuance of checks to sellers of automobiles, such as the plaintiffs. The approval or sanction by the directors or officers of a corporation to acts of fraudulent misrepresentation is a sufficient basis for holding them personally liable for damages arising from such fraudulent acts. W. Fletcher, Private Corporations, § 1150 (1965 ed.)
Considering the facts of this case, we hold that the record supports the trial court's finding that the defendants "knew or should have known" of the overdrawn status of the corporation's bank account at the time in question. We also hold, pursuant to what we consider to be the better reasoned authorities, that although officers and directors of a corporation may not be held liable for the torts of a corporation solely by reason of their office, they may be held liable personally for the results of tortious, fraudulent misrepresentations where they approved of and sanctioned the making of such representations and knew or should have known of the falsity of the representations and the consequential damages which were likely to result therefrom. W. Fletcher, Private Corporations, §§ 1149 and 1150 (1965 ed.); Snowden v. Taggart, 91 Colo. 525, 17 P.2d 305.
Judgment is affirmed.
SILVERSTEIN, C. J., and ENOCH, J., concur.