Gene Roach DANN and Walter W. Dann, Plaintiffs-Appellants,

v.

PERROTTI & HAUPTMAN DEVELOPMENT COMPANY, a Colorado corporation, Security Title Guaranty Company, formerly known as Security Abstract Company of Jefferson County, a Colorado corporation, Pinecrest Homes, Inc., a Colorado corporation, Jerrold G. Hauptman, individually, and Charles R. Perrotti, individually, Defendants-Appellees.

No. 82CA0603.

Colorado Court of Appeals, Div. II.

Aug. 25, 1983.

Herbert A. Shatz, Denver, for plaintiffs-appellants.

Aldo G. Notarianni, Denver, for defendant-appellee Jerrold G. Hauptman.

Frank H. Roberts, Jr., Wheatridge, for defendant-appellee Perrotti & Hauptman Development Co.

STERNBERG, Judge.

The plaintiffs, Gene Roach Dann and her husband, Walter W. Dann, appeal from the judgment of dismissal entered upon the trial court's granting of the motions for directed verdict made at the close of plaintiffs' case by defendants, Perrotti & Hauptman Development Company (P & H), Jerrold G. Hauptman, and Charles R. Perrotti. We affirm.

In 1976, Mrs. Dann's brother, Charles Roach, acting as her agent, entered into negotiations with Perrotti, acting on behalf of P & H, concerning the possible exchange of real properties. During the negotiations, Roach and Perrotti inspected the properties

owned by P & H, including two condominiums which P & H had newly constructed near Dillon. Plaintiffs allege that in conjunction with this inspection, Perrotti represented the property to be habitable and tenantable. Upon Roach's recommendation, in May 1976, Mrs. Dann executed a written exchange agreement which was sent to her at her home in Washington, D.C. The agreement provided in part that the parties were accepting the properties "in their present condition."

Prior to transfer of title, the Danns came to Colorado in June 1976 and stayed at the condominiums for a week. During their stay, they compiled a list of repairs that were needed and presented it to Perrotti, who indicated that the repairs would be made. When it became apparent over time that Perrotti was not making the requested repairs, Roach dealt with Hauptman and the repairs were eventually completed, after closing of the transaction.

The closing occurred in July 1976. The Danns, through Roach, leased the condominiums to third parties for eight days in August and September. Roach himself occupied the condominiums for 36 days in 1976 and 12 days in 1977. According to Roach's testimony, he received a letter on December 13, 1976, from a building inspector stating that no occupancy permits had been issued for the condominiums and, thus, indicating that, while plaintiffs personally could use the units on a reasonable basis, they could not rent the units to others.

The Danns filed suit in May 1977 against defendants, and others not involved in this appeal, alleging, *inter alia,* that: (1) P & H made certain fraudulent misrepresentations which plaintiffs relied on in entering into the agreement; (2) Perrotti and Hauptman were each individually liable because they acted in individual capacities with respect to certain elements of the transaction and because they each individually made the fraudulent misrepresentations alleged above; and (3) P & H breached the implied warranty of habitability by failing to obtain a certificate of occupancy for the condominiums. Trial was to a jury, but at the close

of plaintiffs' evidence, the court granted a directed verdict as to all of the claims.

A trial court may grant a directed verdict, and thereby remove the case from the jury's consideration, only in the clearest of cases. *Romero v. Denver & Rio Grande Western Ry. Co.,* 183 Colo. 32, 514 P.2d 626 (1973). The standard to be applied is whether, with the evidence viewed in the light most favorable to the non-movant and considering every reasonable inference therefrom, *see Conrad v. City & County of Denver,* 656 P.2d 662 (Colo.1982), reasonable persons could not disagree that the outcome should be for the movant and that there is no evidence or inference upon which a verdict against the moving party could be sustained. *Nettrour v. J.C. Penney Co.,* 146 Colo. 150, 360 P.2d 964 (1961).

## I. Deceit—P & H

In granting the motion for directed verdict on the deceit claim against P & H, the court found there was no evidence that any misrepresentations were made to the Danns on which they relied and upon which they were induced to enter into the transaction. The court further found that Roach conducted his own investigation and informed the Danns thereof and that they relied upon his representations as to whether to enter into the transaction.

Among the elements necessary for recovery for deceit is that the plaintiff sustained damage because of his reliance on defendant's false representation. *See Morrison v. Goodspeed,* 100 Colo. 470, 68 P.2d 458 (1937); *Colo.J.I.* 19:1 (2d ed. 1980).

Here, there was testimony, although disputed, that Perrotti represented that the property would be complete and ready for occupancy. In fact, there were certain items left to be completed, but Mrs. Dann testified that she viewed these items as insignificant, and the Danns did not request as damages the cost of these repairs. Instead, their claim appears to have been based on their inability to rent the condominiums because of the absence of a certificate of occupancy.

Assuming, as we must, that the condominium units were represented to be ready

for occupancy and "tenantable" and that Perrotti knowingly misrepresented them to be in that condition, we nevertheless conclude that there was insufficient evidence that the Danns were damaged by their reliance on the representation.

■ In an action for deceit, damages are measured by the difference between the value of the property as represented and the actual value thereof, or the cost of putting the property into the condition in which it was represented to be. *Slack v. Sodal,* 190 Colo. 411, 547 P.2d 923 (1976). The Danns admitted that they could not prove how much rental income they would have received had the property been available to rent, and Roach testified on cross-examination that because of poor ski conditions that year he was not certain how often the units would have been rented. Nor did the Danns adduce evidence that they incurred expense to obtain a certificate of occupancy.

On this state of the evidence, not only was the amount of damages uncertain, but the fact of damages was uncertain as well, and thus, there could be no recovery for deceit. *Great West Food Packers, Inc. v. Longmont Foods Co.,* 636 P.2d 1331 (Colo. App.1981).

II. *Implied Warranty of Habitability—P & H*

In directing a verdict in favor of P & H on plaintiffs' claim for breach of the implied warranty of habitability, the court found that the only evidence as to the lack of a certificate of occupancy and the legal effect thereof was the "hearsay-type" testimony of Roach as to what he had been told by the building inspector. The court further noted that no building code was introduced into evidence and no building inspector testified as to why the condominiums did not have a certificate of occupancy, if in fact they did not. Accordingly, the court, in effect, found that plaintiffs had not established a *prima facie* case on this issue by competent evidence. The court further found that, even if there were no certificate of occupancy, plaintiffs' evidence on damages was so highly speculative that any

verdict in their favor would not be based upon the evidence or the law. We agree that no recovery for breach of the warranty was possible, albeit for a different reason than the trial court.

■ Initially, we note that, contrary to P & H's contention, the language in the exchange agreement that the properties were taken "in their present condition" is insufficient to constitute a disclaimer of the implied warranty of habitability. *See Sloat v. Matheny,* 625 P.2d 1031 (Colo.1981).

■ In the absence of a proper disclaimer, agreements between builder-vendors and purchasers for the sale of newly constructed homes give rise to an implied warranty that local building codes have been complied with, that the home was built in a workmanlike manner, and that the home is suitable for habitation. *Carpenter v. Donohoe,* 154 Colo. 78, 388 P.2d 399 (1964). The purpose of the implied warranty of habitability is to provide a buyer with a remedy for latent defects in the structure or premises which adversely affect its use as a residence and to place liability for defective construction on the builder, not the unwary buyer. *See Sloat v. Matheny, supra; Duncan v. Schuster-Graham Homes, Inc.,* 194 Colo. 441, 578 P.2d 637 (1978); *Carpenter v. Donohoe, supra; Glisan v. Smolenske,* 153 Colo. 274, 387 P.2d 260 (1963). *See generally* Annot., 25 A.L. R.3d 383 (1969).

■ Here, plaintiffs' breach of warranty claim was, in effect, grounded on the allegation that because there was no certificate of occupancy, the condominiums were not habitable and could not be rented. However, a claim based solely on the lack of a certificate of occupancy does not fall within the ambit of the implied warranty. The warranty protects against construction defects, not procedural defects. While it may be true here that the condominiums were not legally habitable because of the absence of a certificate of occupancy, there was no evidence that they did not comply with local building codes, were not built in a workmanlike manner, or were not *suitable* for habitation. *See Carpenter v. Donohoe, supra.*

Hence, the plaintiffs failed to show that their claim came within the ambit of protection of the implied warranty of habitability. Thus, the trial court properly granted a directed verdict.

Because we affirm the dismissal of plaintiffs' causes of action against P & H for deceit and breach of implied warranty of habitability, there is no basis for a finding of individual liability on the part of Perrotti and Hauptman.

The judgment is affirmed.

SMITH and METZGER, JJ., concur.