Doug T. HOANG, Hieu T. Van, Gregory Storbakken, Joan Storbakken, Allan Walts, and Marsha Walts, Plaintiffs–Appellants,

v.

Jack D. ARBESS, Defendant–Appellee.

No. 02CA0417.

Colorado Court of Appeals, Div. III.

April 10, 2003.

Certiorari Denied Dec. 1, 2003.*

---

** Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2002.

* Justice KOURLIS would grant as to the following issue:

Whether the court of appeals has created a vague, unworkable and unpredictable standard for determining the personal liability of corporate officers by announcing that they may be personally liable if they "cooperate" or are "involved" in the negligent conduct of the corporation, including the conduct of other employees, agents or subcontractors for the corporation.

Vanatta, Sullan, Sandgrund & Sullan, P.C., Scott F. Sullan, Ronald M. Sandgrund, Joseph F. Smith, Greenwood Village, CO, for Plaintiffs–Appellants.

White & Steele, P.C., Glendon Laird, John M. Lebsack, Denver, CO, for Defendant–Appellee.

Opinion by Judge DAVIDSON.

In this residential construction defect case, plaintiffs, Doug T. Hoang, Hieu T. Van, Gregory Storbakken, Joan Storbakken, Allan Walts, and Marsha Walts, appeal from the trial court's judgment entered on a directed

verdict dismissing their claims against defendant, Jack D. Arbess. We reverse and remand.

Plaintiffs purchased homes built by Monterra Homes (Powderhorn), LLC, whose members consisted of defendant and other LLC's. Defendant also was Monterra's manager. He hired a construction superintendent and some sales and support staff, but used subcontractors to do all the construction.

Plaintiffs' homes were built on a geological formation known as the Deeply Dipping Bedrock Area. The building sites contain angled layers of Pierre Shale and other soils that, when exposed to water, expand and exert pressure on surface structures. These expansive soils and the upturned bedrock require special construction techniques to lessen the risk of the soils damaging homes built on the land.

Defendant had not previously built homes in Colorado and was unfamiliar with the risks of expansive soils. He hired a soils engineer to provide engineering recommendations and a structural engineer to implement those recommendations. The soils engineer advised defendant in person and in a written report of the dangers of building in the area and recommended specific construction and landscaping techniques to mitigate those risks.

The homes were not constructed in accordance with these engineering and landscape recommendations and, as a result, suffered serious damage. Plaintiffs presented evidence that although they were told that their homes were built on expansive soils, they were not told of the specific geological conditions of their land and were told that Monterra constructed the homes to avoid damage from the expansive soils.

Plaintiffs brought suit against Monterra and defendant for negligence, negligent misrepresentation, negligent nondisclosure or concealment, and violation of the disclosure requirements of § 6–6.5–101, C.R.S.2002, and of the Colorado Consumer Protection Act. Monterra and defendant brought a third-party claim against the structural engineer.

After presentation of all the evidence, the court directed a verdict in favor of defendant on all claims, finding that the evidence revealed no circumstances which would deny defendant the protection of the corporate structure. The court found that defendant acted only as a corporate employee and that the facts did not create a legal duty with regard to defendant individually.

The jury found in favor of plaintiffs and against Monterra and awarded significant damages to each homeowner. The jury also found the structural engineer negligent, but found Monterra completely liable for the damages.

Plaintiffs appeal from the directed verdict in favor of defendant, arguing that, contrary to the trial court's ruling, defendant can be held individually liable for his negligent conduct and for statutory violations. We agree with plaintiffs.

I.

■ As a threshold matter, we deny defendant's motion to dismiss this appeal and reject defendant's contention that plaintiffs waived their right to appeal by relying on the court's directed verdict during a subsequent garnishment proceeding.

Plaintiffs have pursued their judgment against Monterra through a garnishment proceeding against Monterra's insurer. In the garnishment proceeding, the insurer contended that because Monterra "expected or intended" the damages to occur, its policy provided no coverage. As part of their argument for coverage, plaintiffs suggested to the trial court that, because the court had directed a verdict in favor of defendant on plaintiffs' negligence claim, the court necessarily found that defendant did not act intentionally or, in the words of the insurance policy, did not "expect or intend" damages to occur. And, as plaintiffs' reasoning went, if defendant, Monterra's sole actor, did not expect or intend damages to occur, neither did Monterra.

Defendant argues here that plaintiffs received a benefit from the directed verdict by relying on it in making this argument and have therefore waived their appeal of that verdict. We are not persuaded.

■ Accepting an award or legal advantage under a judgment generally waives a party's right to appeal that judgment when the appeal may result in a determination that the party is not entitled to what has been accepted. The doctrine precludes a party who accepts a legal advantage under a judgment from seeking review "which may again put in issue his right to the benefit which he has accepted." *HealthONE v. Rodriguez*, 50 P.3d 879,. 886–87 (Colo.2002)(quoting *Farmers Elevator Co. v. First Nat'l Bank*, 181 Colo. 231, 234, 508 P.2d 1261, 1263 (1973)); *see DiFrancesco v. Particle Interconnect Corp.*, 39 P.3d 1243 (Colo.App.2001).

However, plaintiffs' reliance on the court's directed verdict as a basis for a legal argument in the garnishment proceeding is not an "award or legal advantage" under the judgment.

■ Formulating a legal argument from a court's ruling, without more, is not a tangible benefit and is not the kind of legal advantage contemplated by the waiver principle. *See DiFrancesco v. Particle Interconnect Corp., supra; First Nat'l Bank v. Theos*, 794 P.2d 1055 (Colo.App.1990). Here, defendant does not contend that the garnishment court relied on plaintiffs' argument in deciding that Monterra did not expect or intend damages to occur. Indeed, the court's ruling does not include any such reasoning.

Moreover, plaintiffs' successful appeal will have no effect on either the verdict against Monterra or plaintiffs' ability to collect from the insurer through the garnishment proceeding. Plaintiffs raise no argument in this appeal that defendant expected or intended damages to occur; all of plaintiffs' claims against defendant sound in negligence. *See Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083 (Colo.1991)(recovery will be barred only if the insured intended the damages, or if it can be said that the damages were, in a broader sense, "intended" by the insured because the insured knew that the damages would flow directly and immediately from its intentional act).

## II.

Plaintiffs contend that the trial court erred by directing a verdict in favor of defendant on their claims for negligence, negligent misrepresentation, and negligent nondisclosure. Specifically, plaintiffs argue that, contrary to the trial court's ruling, it was for the jury to determine whether defendant is liable for his own individual torts. Defendant argues that, as a matter of law, only Monterra, and not defendant acting in his capacity as a corporate manager or officer, had a duty to the home purchasers. We agree with plaintiffs.

■ A builder has a duty to use reasonable care and skill in construction of a home, and the failure to do so constitutes negligence. *See Cosmopolitan Homes Inc. v. Weller*, 663 P.2d 1041, 1042, 1043 (Colo. 1983)("An obligation to act without negligence in the construction of a home is independent of contractual obligations such as an implied warranty of habitability." "A contractual obligation gives rise to a common law duty to perform the work subject to the contract with reasonable care and skill.").

■ The issue here is whether such a duty applies to defendant. While an officer of a corporation cannot be held personally liable for a corporation's tort solely by reason of his or her official capacity, an officer may be held personally liable for his or her individual acts of negligence even though committed on behalf of the corporation, which is also held liable. *Snowden v. Taggart*, 91 Colo. 525, 531, 17 P.2d 305, 307 (1932)("To permit an agent of a corporation, in carrying on its business, to inflict wrong and injuries upon others, and then shield himself from liability behind his vicarious character, would often both sanction and encourage the perpetration of flagrant and wanton injuries by agents of insolvent and irresponsible corporations."); *see Sanford v. Kobey Bros. Constr. Corp.*, 689 P.2d 724 (Colo.App.1984)(corporate representative found jointly and severally liable for construction defects he authorized). The parties do not dispute that this principle applies equally to a manager of a limited liability company. *See generally* § 7–80–101, et seq., C.R.S.2002; Thompson, *The Limits of Liability in the New Limited Liability Entities*, 32 Wake Forest L.Rev. 1, 21 (1997).

Moreover, that a defendant is at all times acting on behalf of the corporation does not relieve the defendant of liability. *See Galie v. RAM Assocs. Mgmt. Servs., Inc.*, 757 P.2d 176 (Colo.App.1988); *Sanford v. Kobey Bros. Constr. Corp., supra.* And the corporate veil need not be pierced where a tort action is brought against an officer or director and the elements of the tort are proved. *See Sanford v. Kobey Bros. Constr. Corp., supra; Huffman v. Poore*, 6 Neb.App. 43, 569 N.W.2d 549 (1997).

Defendant nonetheless contends that, even if under some circumstances a corporate officer can be held personally liable for his or her torts, here, the court correctly found insufficient evidence that he, as an individual, participated in the torts alleged. We disagree.

To be found personally liable to third persons for a tort, the officer of a corporation must have participated in the tort. *See Snowden v. Taggart, supra* (defendant was chief tortfeasor; he personally conceived the plan and participated in its execution); *Sanford v. Kobey Bros. Constr. Corp., supra* (defendant personally and solely authorized the specific negligent construction); *Klockner v. Keser*, 29 Colo.App. 476, 488 P.2d 1135 (1971)(corporate directors or officers approved or sanctioned fraudulent misrepresentation).

However, courts vary in their views as to the necessary level of participation. At a minimum, personal liability attaches to a defendant who was directly involved in the conduct through conception or authorization. *See Snowden v. Taggart, supra; Sanford v. Kobey Bros. Constr. Corp., supra.* Other direct involvement, such as active participation or cooperation, specific direction, or sanction of the conduct, also may be sufficient. *See Am. Airlines v. Christensen*, 967 F.2d 410 (10th Cir.1992)(applying Utah law; defendants directed or actively participated in the corporate defendants' activities, and their tortious conduct pervaded the business); *Lobato v. Pay Less Drug Stores Inc.*, 261 F.2d 406, 409 (10th Cir.1958)(applying New Mexico law; "[s]pecific direction or sanction of, or active participation or cooperation in, a positively wrongful act of commis-sion or omission which operates to the injury or prejudice of the complaining party is necessary to generate individual liability in damages of an officer or agent of a corporation for the tort of the corporation"). *See generally* 3A William Meade Fletcher et al., *Fletcher Cyclopedia of the Law of Private Corporations* §§ 1134–1137, at 199–219 (perm.ed., rev.vol.1998)(corporate officer responsibility doctrine; if corporate officer participates in wrongful conduct, or knowingly approves conduct, both officer and corporation are jointly liable for the penalties).

Whether defendant approved of, directed, actively participated in, or cooperated in the negligent conduct is a question of fact for the jury. *See Grothe v. Helterbrand*, 946 S.W.2d 301 (Mo.Ct.App.1997)(court views evidence in light most favorable to plaintiff to determine individual's involvement); *Wolfe v. Wilmington Shipyard, Inc.*, 135 N.C.App. 661, 522 S.E.2d 306 (1999)(same); *cf. Sewell v. Pub. Serv. Co.*, 832 P.2d 994 (Colo.App.1991)(foreseeability is factual question for jury).

Although, as defendant correctly points out, whether a court should recognize a legal duty in a particular situation is a question of law, *see Taco Bell, Inc. v. Lannon*, 744 P.2d 43 (Colo.1987), the issue here is whether a recognized duty, the use of reasonable care in home construction, applies to defendant as a matter of fact pursuant to the corporate officer responsibility doctrine.

Hence, a directed verdict would be proper only if, after viewing the evidence in the light most favorable to plaintiffs and considering every reasonable inference therefrom, reasonable persons could not disagree that the outcome should be for defendant. *See Dann v. Perrotti & Hauptman Dev. Co.*, 670 P.2d 448 (Colo.App.1983).

Here, viewed in the light most favorable to plaintiffs, we conclude the evidence was sufficient to show that defendant approved of, directed, actively participated in, or cooperated in the negligent conduct. For example, plaintiffs presented evidence that defendant was personally involved in each step of the construction, chose the individual home sites,

oversaw the subcontractors, set policies and procedures for the subcontractors to follow, and visited the construction sites at least once a week.

Furthermore, there was evidence that defendant knew or should have known the construction techniques implemented did not meet the recommendations by the soils engineer. *See Snowden v. Taggart, supra* (defendant knew or should have known that the bonds were worthless). Defendant and the soils engineer testified that they met and discussed the specific problems created by the expansive soils, the risks involved, and the construction techniques required. The soils engineer testified that he told defendant about the risks of building in the area, proposed various construction techniques to minimize these risks, and suggested that defendant might want to build elsewhere.

Although defendant testified that he relied on the structural engineer to properly implement the necessary techniques and that he did not know the structural engineer failed to do so, plaintiffs presented evidence showing that defendant should have known the techniques were not being implemented. Defendant also agreed that he had a responsibility to identify any discrepancies between the construction techniques and the soils engineering recommendations and to instruct the subcontractors to correct the problems. And defendant testified that contrary to the soils report recommendations, he did not retain the soils engineering company during the foundation construction.

Plaintiffs also presented evidence that defendant directly disregarded some of the soils engineer's recommendations. Defendant agreed that, in violation of the soils engineer's recommendations, he elected to construct the garage floors without a special design and to plant bluegrass and install sprinkler systems around each home.

Thus, there was sufficient evidence presented that defendant knew or should have known that the homes and their landscaping were constructed improperly. Hence, the issue of defendant's negligence should not have been taken from the jury by directed verdict.

Similarly, regarding the claims for negligent misrepresentation and negligent nondisclosure and concealment, plaintiffs presented sufficient evidence that defendant approved of, directed, actively participated in, or cooperated in the representations made to the purchasers. Defendant testified that he oversaw the activities of Monterra's sales people, told them how to conduct sales activities, made decisions regarding the information that was disclosed, and directed them to tell prospective buyers that as long as the homes were properly maintained, their engineering would prevent the risk of expansive soils.

Again, defendant contends that he did not know the construction techniques used were insufficient to protect against the expansive soils and thus did not negligently misrepresent to the purchasers that they were. However, plaintiffs presented evidence that defendant should have known the sales representations were false. *Cf. Burman v. Richmond Homes Ltd.,* 821 P.2d 913 (Colo.App.1991)(plaintiffs did not present evidence of negligent representation because they failed to provide evidence that defendant knew or should have known what true taxes would have been). Evidence also was presented that defendant knew that the soils engineering report recommended that lawns and sprinkler irrigation systems should not be installed at the homes and that the representations made to the homeowners stated that lawns and sprinklers were acceptable.

We reject defendant's contention that plaintiffs' questioning of him addressed only decisions made by Monterra, rather than any made by him as an individual. The record indicates that the questioning efficiently addressed defendant's actions both as an individual and as a representative of the corporation. That a defendant's tortious acts are done on behalf of the corporation does not relieve the defendant of liability. *See Galie v. RAM Assocs. Mgmt. Servs., Inc., supra; Sanford v. Kobey Bros. Constr. Corp., supra.*

## III.

■ Plaintiffs also contend that the trial court erred in granting a directed verdict and dismissing their claims under the Consumer Protection Act. We agree.

Individual liability of corporate officers and agents is proper under the Consumer Protection Act. This principle applies to an officer of an LLC, such as defendant here. The Act states, "The provisions of this article shall be available in a civil action for any claim against any *person* who has engaged in or caused another to engage in any deceptive trade practice listed in this article." Section 6–1–113(1), C.R.S.2002 (emphasis added). Moreover, "person" is defined as *"an individual,* corporation, business trust, estate, trust, partnership, unincorporated association, or two or more thereof having a joint or common interest, or any other legal or commercial entity." Section 6–1–102(6), C.R.S. 2002 (emphasis added); *see also People ex rel. MacFarlane v. Alpert Corp.,* 660 P.2d 1295 (Colo.App.1982).

Again, plaintiffs presented evidence that defendant knew or should have known the construction techniques implemented were insufficient to protect against damage from expansive soils and that, therefore, defendant should not have directed the sales persons to represent otherwise. *See* § 6–1–105(1)(g), C.R.S.2002 (person engages in deceptive trade practice when he represents "that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another").

Moreover, plaintiffs presented evidence that defendant failed to disclose to prospective homebuyers that certain landscaping techniques would damage the homes and that defendant believed the homes would be more attractive with landscaping that varied from the requirements. *See* § 6–1–105(1)(u), C.R.S.2002 (deceptive trade practices include "[f]ailure to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction").

## IV.

Plaintiffs included a claim under § 6–6.5–101, which requires that a developer, builder, or representative supply the purchaser with certain information regarding soil conditions and building and maintenance methods. We agree with plaintiffs that this section applies to an individual acting on behalf of a corporate developer, and hence, the trial court should not have dismissed the claim on this basis. *See Sprung v. Adcock,* 903 P.2d 1224 (Colo.App.1995)(individual contractor fined under § 6–6.5–101).

## V.

Defendant next contends that there are alternative grounds for dismissal of the claims against him. We reject both grounds.

## A.

Defendant contends that plaintiffs failed to set forth the appropriate standard of care. Specifically, defendant argues that plaintiffs' expert witness testified only as to the standard applicable to Monterra, and not to defendant individually. We disagree.

Here, plaintiffs' expert testified to the standard of care applicable to "builders" in Colorado. Although, on occasion, plaintiffs' counsel specifically asked the expert questions regarding "Monterra Homes," we disagree with defendant that this testimony was inadequate to establish the standard of care applicable to an individual builder.

The same standard of care that applies to a corporation also applies to an officer, manager, or agent of a corporation who individually approves, directs, or actively participates or cooperates in the negligent conduct. *See Snowden v. Taggart, supra; Sanford v. Kobey Bros. Constr. Corp., supra.*

As discussed, plaintiffs presented ample evidence for a jury to conclude that defendant approved of, directed, participated in, and cooperated with the negligent conduct.

In any event, expert witness testimony is not necessary to establish a builder's standard of care. *See Howard v. Wood Bros. Homes Inc.,* 835 P.2d 556 (Colo.App.1992)(rejecting argument that directed verdict was proper where no expert testimony was presented as to the standard of care of residen-

tial home builder), *aff'd in part and rev'd in part*, 862 P.2d 925 (Colo.1993); *Calvaresi v. Nat'l Dev. Co.*, 772 P.2d 640 (Colo.App.1988)(expert testimony on standard of care not required where evidence was undisputed that real estate developers failed to investigate possibility of subsidence or disclose existence of mine to purchasers of lots).

Also, defendant admitted that his standard of care would be to read carefully and to follow the recommendations of the soils engineer, that he had ultimate responsibility to identify discrepancies in the construction, and that he had an obligation to construct homes in a good and workmanlike manner so they would be habitable and suitable for their intended purpose.

### B.

We disagree with defendant that the trial court erred by failing to require plaintiffs to specify which damages were caused by Monterra and which were caused by defendant individually. This function is properly left to the jury. *See DeBose v. Bear Valley Church of Christ*, 890 P.2d 214 (Colo. App.1994), *rev'd on other grounds*, 928 P.2d 1315 (Colo.1996).

The judgment is reversed, and the case is remanded with directions to reinstate the claims for relief against defendant and for further proceedings consistent with this opinion.

Judge ROY and Judge WEBB concur.