24CA0632 Winninger v Vail Clinic 08-21-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0632
Eagle County District Court No. 17CV30102
Honorable Russel H. Granger, Judge
Honorable Paul R. Dunkelman, Judge

---

Lindsay Winninger and Sports Rehab Consulting LLC, a Colorado limited liability company,

Plaintiffs-Appellants and Cross-Appellees,

v.

Vail Clinic, Inc. d/b/a Vail Valley Medical Center, a Colorado nonprofit corporation,

Defendant-Appellee and Cross-Appellant,

and

Doris Kirchner, Nicholas Brown, and Michael Shannon,

Defendants-Appellees.

---

JUDGMENTS AFFIRMED IN PART AND VACATED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE FOX
Harris and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 21, 2025

---

Jesse Wiens Law, Jesse Wiens, Edwards, Colorado; Sonya R. Braunschweig, Minneapolis, Minnesota, for Plaintiffs-Appellants and Cross-Appellees

Foley & Lardner LLP, Tamera D. Westerberg, Stephanie Adamo, Zachary A. Flagel, Denver, Colorado, for Defendant-Appellee and Cross-Appellant

Fennemore Craig, P.C., John M. McHugh, Allison M. Hester, Amy L. Jones, Denver, Colorado, for Defendants-Appellees

¶ 1　　In this defamation case, plaintiffs, Lindsay Winninger (Winninger) and her business, Sports Rehab Consulting LLC (Sports Rehab), appeal the summary judgment orders entered in favor of defendants, Vail Clinic, Inc. d/b/a Vail Valley Medical Center (Vail Health), and its chief executive officer (CEO), Doris Kirchner, as well as the award of costs to Vail Health's vice president and director, Nicholas Brown and Michael Shannon, respectively. Vail Health cross-appeals the judgment entered following a jury trial on its counterclaims. We vacate the award of costs to Brown and Shannon, but we otherwise affirm the judgments.

## I.　　Background

¶ 2　　Winninger worked as a physical therapist for Howard Head Sports Medicine (Howard Head), a clinic run by Vail Health. In 2012, Winninger left Howard Head to become the head physical therapist for the United States women's ski team. When she left, Winninger copied documents from Howard Head's shared network drive onto an external storage device (a USB drive). These documents included statutorily protected health information (PHI) for 710 patients. However, Vail Health would not learn that

1

Winninger took files in 2012 until years later, after litigation and discovery commenced.

¶ 3    In 2014, Winninger formed Sports Rehab and later opened clinics in Vail and Denver. She hired David Cimino,[1] her former colleague from Howard Head, to work at Sports Rehab's Vail location. In early 2016, Vail Health discovered that before he left Howard Head in December 2015, Cimino had downloaded information from the clinic's shared network.

¶ 4    Vail Health's actions taken in response to learning that Cimino downloaded this information gave rise to Winninger and Sports Rehab's initiation of this lawsuit. After Vail Health notified its patients regarding "a potential disclosure of [PHI]," it sent a letter to the Vail police about the potential disclosure (Letter); it responded to a subpoena from the Colorado Department of Regulatory Agencies (DORA) about the incident with a letter substantially similar to the one sent to the police (DORA Letter); and it sent a draft complaint to Winninger purportedly asserting several claims against Winninger, Sports Rehab, and Cimino (Draft Complaint).

---

[1] Cimino was a third-party defendant in the case before the district court, but he is not a party to this appeal.

¶ 5    Winninger and Sports Rehab then sued Vail Health and Kirchner, asserting claims for defamation and tortious interference with Sports Rehab's current and prospective business relationships based on alleged defamatory statements in the Letter, the DORA Letter, and the Draft Complaint. Vail Health (without Kirchner) brought counterclaims against Winninger and Sports Rehab and third-party claims against Cimino. Winninger and Sports Rehab later filed their first amended complaint (FAC) with twenty-seven claims — twenty-four defamation claims and three tortious interference claims. The gist of the claims was that Vail Health and its employees, Kirchner, Brown, and Shannon, had defamed Winninger and Sports Rehab by suggesting that Winninger stole Vail Health's PHI and implicating her in Cimino's alleged theft of PHI, thereby affecting her ability to obtain referrals and causing financial and reputational harm to Sports Rehab.

¶ 6    In 2019, Vail Health and Kirchner moved for summary judgment on the twenty-four defamation claims. Three days later, Winninger and Sports Rehab again moved to amend their complaint. As discussed below, the district court initially granted

their request but later reconsidered and denied their motion to file a second amended complaint (SAC).

¶ 7 On May 31, 2019, the district court granted in part Vail Health and Kirchner's summary judgment motion, entering judgment against Winninger and Sports Rehab on most of the defamation claims, including the claims related to the Letter, the DORA Letter, and the Draft Complaint (the 2019 Order).

¶ 8 During discovery on the remaining claims and counterclaims, Vail Health learned that when Winninger left Howard Head in 2012, she also downloaded documents allegedly containing PHI. Vail Health and Kirchner moved for summary judgment on the remaining defamation and tortious interference claims on the grounds that the statements concerning Winninger's misappropriation of PHI were substantially true and therefore not defamatory. In November 2021, the court granted the motion and entered judgment against Winninger and Sports Rehab on all their remaining claims (the 2021 Order).

¶ 9 The dismissal of Winninger and Sports Rehab's claims left only Vail Health's counterclaims for misappropriation of trade secrets, interference with contract, civil conspiracy, and conversion. The

parties proceeded to a jury trial on those counterclaims in February 2024. The jury found in favor of Winninger and Sports Rehab on all counterclaims. It found that, although Cimino took Vail Health's documents, Winninger did not misappropriate any of the information; that Winninger had interfered with Cimino's performance of his contract, but Vail Health did not sustain any damages; and that Winninger took documents owned by Vail Health, but she did not "exercise unauthorized dominion or ownership over these documents when she took the[m]."

## II. Issues on Appeal

¶ 10 Winninger and Sports Rehab argue that the district court erred by denying their motion to file the SAC and that the 2019 Order is void because it improperly relied on the inoperative SAC.

¶ 11 Regarding the 2019 Order, Winninger and Sports Rehab argue that the district court erred by granting summary judgment on the defamation claims involving Vail Health's statements in (1) the Letter; (2) the DORA Letter; and (3) the unfiled Draft Complaint. Winninger and Sports Rehab also argue that the court erred by granting summary judgment in Kirchner's favor on the defamation claims involving statements made by others that were allegedly

5

attributable to Kirchner as Vail Health's CEO. And they challenge the court's award of fees and costs to Shannon and Brown.

¶ 12 As to the 2021 Order, Winninger and Sports Rehab contend that the district court erred by granting summary judgment despite disputed issues of material fact and because the jury's verdict on the counterclaims proved that Vail Health's statements were not, in fact, substantially true.

¶ 13 Vail Health's cross-appeal challenges the district court's refusal to give its proffered jury instruction related to Vail Health's conversion counterclaim. Kirchner, Shannon, and Brown also request attorney fees and costs incurred on appeal.

### III. Winninger and Sports Rehab's Appeal

#### A. Standard of Review and Summary Judgment Principles

¶ 14 We review orders granting summary judgment de novo. *McDonald v. Zions First Nat'l Bank, N.A.*, 2015 COA 29, ¶ 44. "Whether a . . . qualified privilege exists is a question of law that we review de novo." *Gonzales v. Hushen*, 2023 COA 87, ¶ 77, *aff'd in part and rev'd in part on other grounds*, 2023 COA 87. However, when reviewing appeals from a grant of summary judgment, we "appl[y] the same standards as the trial court in determining

6

whether summary judgment is warranted." *McDonald*, ¶ 85 (citation omitted). Therefore, we do not "consider 'arguments and evidence [that were] not presented to the trial court in connection with [the] motion for summary judgment.'" *Id.* (alterations in original) (citation omitted).

¶ 15 "[S]ummary judgment 'is only appropriate if the pleadings, affidavits, depositions, or admissions establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.'" *Id.* at ¶ 45 (citation omitted). Initially, the moving party bears the burden of "establish[ing] that no genuine issue of fact exits." *Id.* at ¶ 46 (quoting *Aspen Wilderness Workshop, Inc. v. Colo. Water Conservation Bd.*, 901 P.2d 1251, 1256 (Colo. 1995)). If the movant meets its initial burden, "the burden shifts to the nonmoving party to establish that there is a triable issue of fact." *Id.* (quoting *McCormick v. Union Pac. Res. Co.*, 14 P.3d 346, 349 (Colo. 2000)). The nonmoving party must "set forth specific facts showing a genuine issue of material fact" and "cannot rely on the mere allegations [in the] pleadings." *Id.* at ¶ 61 (alteration in original) (citation omitted).

## B.    The 2019 Order

### 1.    Second Amended Complaint

¶ 16    Winninger and Sports Rehab first challenge the district court's denial of their motion to file the SAC.  The parties agree that this issue was preserved.  *See Rinker v. Colina-Lee*, 2019 COA 45, ¶ 26 (If "the trial court rules sua sponte on an issue, the merits of its ruling are subject to review on appeal, whether timely objections were made or not.").  Winninger and Sports Rehab also contend that the 2019 Order was void because the court relied on the inoperative SAC.  We disagree with both arguments.

¶ 17    Winninger and Sports Rehab moved to file the SAC in January 2019, and the district court initially granted the request on March 5, 2019, finding that "the amended complaint is expansive" but that it would not "create unreasonable delay."  On the same day, the court also granted Vail Health's motion to amend its counterclaims and third-party complaint.  The SAC spanned more than 100 pages, raised thirty-four claims, and added Shannon and Brown as defendants.

¶ 18    On May 22, 2019, the district court continued a trial setting conference because its consideration of the summary judgment

motion was taking longer than "even the most complex cases due to the length of" Winninger and Sports Rehab's response to Vail Health's summary judgment motion (Response), the Response's poor organization, and the length of the SAC. Winninger and Sports Rehab's attorney complained that the "case was filed early in May 2017"; that "[h]aving a trial setting conference . . . years [later] d[id] not seem to be in accord with the objectives of the district"; and that such delay "likely pushes the trial into next year." On May 28, 2019, acknowledging the "recent[] complain[t] that this case . . . need[ed] to get to [trial]," the district court found that "[a]n amended complaint w[ould] cause additional delay" and rescinded its previous grant of leave to Winninger and Sports Rehab to file the SAC.

¶ 19    Three days later, on May 31, 2019, the district court's 2019 Order granted partial summary judgment in Vail Health's favor on Winninger's defamation claims. In its 2019 Order, the court noted it had granted Winninger and Sports Rehab's motion to file the SAC but failed to mention its later reconsideration and denial of that motion. The court then stated that the 2019 Order pertained "only to the [SAC]" but that it would refer to the allegations in the FAC,

9

consistent with Vail Health and Kirchner's motion for summary judgment, for efficiency and clarity. However, aside from these references and the mention of two exhibits attached to Winninger and Sports Rehab's motion to file the SAC, the 2019 Order did not otherwise discuss the SAC. And the two cited exhibits were also attached to the summary judgment motion.

¶ 20 Winninger and Sports Rehab now argue that the district court abused its discretion when it sua sponte rescinded its order allowing the SAC, while granting Vail Health's motion to amend its counterclaims and third-party complaint.

¶ 21 "We review a district court's denial of a motion to amend pleadings for an abuse of discretion." *Riccatone v. Colo. Choice Health Plans*, 2013 COA 133, ¶ 47. An abuse of discretion occurs if the court's "decision is manifestly arbitrary, unreasonable, or unfair." *Id.* "The party seeking to amend bears the burden of demonstrating that leave should be granted." *Id.* at ¶ 48. Although district courts are generally encouraged to grant such requests, "leave to amend is not to be granted automatically." *Id.* at ¶ 49 (quoting *Varner v. Dist. Ct.,* 618 P.2d 1388, 1390 (Colo. 1980)); *see*

*also* C.R.C.P. 15(a). Concerns about delay alone "may justify denial of leave to amend." *Riccatone*, ¶ 49.

¶ 22 Winninger and Sports Rehab contend that the district court provided no reason for its "inconsistent or disparate treatment" of the two motions to amend, but this is not entirely accurate. The court explained that it was continuing the trial setting conference in part due to the length of the SAC. Sports Rehab and Winninger complained about any further delay, so the court heeded their concerns and withdrew its grant of leave to file the SAC. Because the delay was partly attributable to the SAC's length and complexity, the court exercised its discretion to remedy the delay by rejecting the SAC. And although the court granted Vail Health's motion to amend its counterclaims and third-party complaint, Vail Health did not express concerns about timing, nor did the court cite Vail Health's amended pleading as a source of delay. Moreover, Vail Health's amended pleading was less than thirty pages long and did not add new claims, compared to the 123-page SAC that proposed the addition of multiple new claims and parties.

¶ 23 Winninger and Sports Rehab also do not explain why they did not include or could not have included the proposed additional

claims in the FAC. *See id.* at ¶ 49 ("The moving party carries the burden of demonstrating a . . . reason for not pleading a claim earlier."). Conversely, Vail Health explained that it sought leave to amend based on new evidence revealed during discovery. We also reject Winninger and Sports Rehab's argument that this case mirrors the *Southern Cross Ranches* case in which the district court was found to have abused its discretion by entering two inconsistent summary judgment rulings. *See S. Cross Ranches, LLC v. JBC Agric. Mgmt., LLC*, 2019 COA 58, ¶¶ 45-50. There, the court did not explain why it reached inconsistent results, and "while the court had discretion to disregard its prior ruling, the record [did] not show that it consciously did so." *Id.* at ¶¶ 46, 48. Here, by contrast, the court explained that it was disregarding its prior ruling based on Winninger and Sports Rehab's concerns about further delay.

¶ 24     Under these circumstances, the district court did not abuse its discretion by rescinding its initial order and denying leave to file the SAC. *See Riccatone,* ¶ 47. We disagree with Winninger and Sports Rehab's argument that *Riccatone* is inapplicable because the circumstances there involved "seeking futile amendments after

summary judgment was granted." In *Riccatone*, ¶¶ 49-50, a division of this court explicitly held that delay alone may justify denial of leave to amend, and the district court's ruling here was premised not only on the delay but also on addressing Winninger and Sports Rehab's concerns about that delay.

¶ 25     Finally, we reject Winninger and Sports Rehab's argument that the district court's brief references to the SAC voided its 2019 Order. Even assuming this argument was preserved for appeal, we discern no reversible error. The district court's order, the summary judgment motion, and all related pleadings were substantively based on the *operative* complaint (the FAC); the court merely referenced the inoperative SAC in passing. As a result, the out-of-state cases involving orders based on inoperative complaints, upon which Winninger and Sports Rehab rely, are inapposite. When it denied Winninger and Sports Rehab's motion to file the SAC, the court said its 2019 Order was "in the final stages." Thus, it appears the court simply forgot to remove the references to the SAC, but nothing suggests that the 2019 Order was substantively based on it. Accordingly, the court's brief references to the SAC did not void the 2019 Order.

¶ 26    In any event, because the court only considered claims raised in the operative FAC, any references to the SAC were harmless. *See* C.R.C.P. 61; *Laura A. Newman, LLC v. Roberts*, 2016 CO 9, ¶ 10 (noting that an error is harmless unless it "substantially influenced the outcome of the case"). The court's mention of the SAC and two duplicative exhibits attached to the motion to file the SAC did not "substantially influence[] the outcome of the case," *Roberts*, ¶ 10, because — as the court noted — "the [claims] at issue are unaltered by the [SAC] . . . but for Plaintiffs' addition to each c[laim] their entitlement to an award of damages."

### 2.    Vail Police Letter Statements

¶ 27    Winninger and Sports Rehab next contend that the district court erred by granting summary judgment in favor of Vail Health on their defamation claim involving statements in the Letter Vail Health sent to Vail police.[2] We disagree.

¶ 28    In the FAC, Winninger and Sports Rehab alleged that, in the Letter, Vail Health falsely asserted it knew "Winninger was involved

---

[2] We do not consider Winninger and Sports Rehab's single-sentence argument that this issue should not have been decided on summary judgment. *See Woodbridge Condo. Ass'n v. Lo Viento Blanco, LLC*, 2020 COA 34, ¶ 41 n.12, *aff'd*, 2021 CO 56.

with the purported criminal act of stealing Vail Health documents and patient files." The Letter detailed the results of a forensic examination of Cimino's work computer, which included communications that suggested he started working with Winninger before he left Howard Head. It explained that Cimino downloaded files from his work computer and accessed them after he left Howard Head. The Letter noted that Winninger sent text messages to a Vail Health employee "admit[ting] that she was aware of . . . Cimino's activities."

¶ 29 The Letter concluded as follows: "To summarize, [Vail Health] knows" that Cimino worked for Sports Rehab while employed by Vail Health; "stole documents and patient information from" Vail Health; "attempted to delete files"; and accessed the files while employed by Sports Rehab. The Letter added that "Winninger ha[d] been actively involved in these behaviors."

¶ 30 In the summary judgment motion, Vail Health and Kirchner argued that the Letter's statements enjoyed a qualified privilege and, therefore, could not support a defamation claim unless they were made with actual malice. As discussed below, Winninger and Sports Rehab's Response primarily focused on privilege as it related

to the prelitigation Draft Complaint. The Response referenced the Letter only briefly. First, because it asserted both were protected by qualified privilege, the Response discussed the unfiled Draft Complaint and Letter together arguing that summary judgment was an improper vehicle for a privilege determination. It later referenced the Letter in a bulleted list of allegedly disputed facts. Under a heading titled, "Serious Doubts," the list cited Kirchner's deposition testimony, stating she "did not know that Lindsay Winninger had been involved with patient files downloaded by David Cimino" when Vail Health sent the Letter.

¶ 31 In its 2019 Order, the district court concluded that the Letter was subject to a qualified privilege, meaning that Winninger and Sports Rehab had the burden of presenting evidence that Vail Health acted with actual malice, which, according to the court, they failed to do.

a. Preservation

¶ 32 Vail Health and Kirchner argue that Winninger and Sports Rehab did not preserve their challenge to the district court's actual malice finding and that they raise arguments and cite evidence not presented to the district court. Vail Health adds that the Response

16

failed to tie any evidence to an argument about the Letter.

Winninger and Sports Rehab's reply brief does not cite the record to refute this characterization. Instead, they accuse Vail Health of "tak[ing] a hyper-technical approach to preservation." We agree with Kirchner and Vail Health that parties cannot make new arguments on appeal, and we consider only the arguments and evidence that were presented to the district court. *See McDonald*, ¶ 85.

### b. Applicable Law

¶ 33 When reviewing the district court's grant of summary judgment, we apply the same law discussed *supra* Part III.A. Additionally, in the defamation context, certain statements enjoy heightened protection from liability. *See Lawson v. Stow*, 2014 COA 26, ¶ 18. For example, reports of possible criminal conduct to law enforcement officials "relate[] to a matter of public concern" and thus enjoy a qualified privilege. *Id.* at ¶¶ 18, 21. If a qualified privilege applies, "the defamed party is subject to heightened burdens of proof." *Id.* at ¶ 18. The defamed party must prove (1) that the statement was false "by clear and convincing evidence"; (2) "that the speaker published the statement with actual malice —

that is, with actual knowledge that the statement was false or with reckless disregard for whether the statement was true"; and (3) that the defamed party sustained actual damages. *Id.* "A speaker acts with reckless disregard if the speaker 'entertain[s] serious doubts as to the truth of the statement or act[s] with a high degree of awareness of its probable falsity.'" *Coomer v. Donald J. Trump for President, Inc.*, 2024 COA 35, ¶ 147 (alterations in original) (citation omitted).

### c.     Analysis

¶ 34     On appeal, Winninger and Sports Rehab acknowledge the statements in the Letter are subject to a qualified privilege, but they say that the court erred by concluding that there was no evidence of actual malice. They first argue that the court "never mentioned standard malice principles," including that "[a]ctual malice can, and often must, be proved by circumstantial evidence," *Coomer*, ¶ 149. They argue that the court did not consider any circumstantial evidence, including evidence that Vail Health entertained serious doubts about the truth of the statements in the Letter. *See id.* at ¶ 147.

¶ 35    But the district court *did* consider the evidence Winninger and Sports Rehab cited as proof of serious doubts — Kirchner's deposition testimony that she did not know if Winninger stole files. That the court did not explicitly cite law explaining the circumstantial evidence or serious doubts standard is not dispositive because, as we explain below, the court's overall conclusion was not erroneous.

¶ 36    Winninger and Sports Rehab next argue that the FAC's allegations supported an actual malice finding, including the allegation that Vail Health made false statements to destroy Winninger's and Sports Rehab's reputation and drive them out of business. And because Vail Health and Kirchner failed to rebut this allegation, they contend that summary judgment was improper even if the Response failed to address the allegation. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 160 (1970) (If "the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented.") (citation omitted).

¶ 37    In their Response, Winninger and Sports Rehab did not cite the FAC's allegation that Vail Health intended to harm their

19

business or reputation, nor did the Response contain any evidence of ill motive purported to be specifically connected to the Letter. *See Valentine v. Mountain States Mut. Cas. Co.*, 252 P.3d 1182, 1188 n.4 (Colo. App. 2011) ("A party's mere opposition to its adversary's request . . . does not preserve all potential avenues for relief on appeal. We review only the specific arguments a party pursued before the district court."). Even assuming that the FAC's conclusory allegation about Vail Health's motives was sufficient to suggest actual malice (without also citing this allegation in the Response), the FAC's unsupported allegation was not dispositive of actual malice generally or as it related to the Letter. *See Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 664-65 (1989) (concluding that a motive to "gain[] a competitive advantage" is insufficient to prove actual malice).

¶ 38    Furthermore, the Letter suggests that Vail Health implicated Winninger in Cimino's conduct not out of a desire to harm Sports Rehab or Winninger but based on text messages Winninger sent (cited in the Letter), including a message "admitt[ing] she was aware of . . . Cimino's activities." In that text, sent during Vail Health's investigation of Cimino, Winninger told a Vail Health

20

employee, "You know as well as I do that everyone who leaves takes their files and protocols off the drive."

¶ 39 Therefore, even accepting as true the FAC's allegations that Vail Health harbored ill motive towards Winninger and Sports Rehab, the FAC's bald allegations do not support a conclusion that Vail Health acted with actual malice when it wrote that Vail Health "knows . . . Winninger has been actively involved in these behaviors." *See Gonzales*, ¶ 76 ("[I]ll will and improper motive . . . are not elements of actual malice" but may provide "circumstantial evidence of actual malice.") (citation omitted). Instead, the evidence suggests that this statement was based, in part, on Winninger's own text messages.

¶ 40 Moreover, the Response conceded that Winninger and Sports Rehab had been "precluded from proving . . . bad faith, . . . malice or reckless disregard of the truth," but they did not seek relief under C.R.C.P. 56(f). Accordingly, they cannot now argue that allegations they failed to connect to the malice inquiry were, alone, sufficient to prove actual malice. *See Gravina Siding & Windows Co. v. Gravina*, 2022 COA 50, ¶ 71 (Courts are not obligated "to make or develop a party's argument.") (citation omitted); *McDonald*,

21

¶ 61 (Parties opposing summary judgment must "set forth specific facts showing a genuine issue of material fact" and "cannot rely on the mere allegations [in the] pleadings.") (alteration in original) (citation omitted).

¶ 41    Winninger and Sports Rehab next contend that the district court improperly drew inferences from the evidence against them when they, as the nonmoving parties, were entitled to the benefit of all reasonable inferences. *See Univ. of Denver v. Doe*, 2024 CO 27, ¶ 8 ("The court must resolve 'all doubts' in favor of the nonmoving party and against the moving party.") (citation omitted). They first argue that the court "denied summary judgment [on other claims] because material facts were disputed as to Winninger's involvement" but found no dispute on the claim involving the Letter. The question before the court with respect to the Letter was not whether there was a factual dispute about Winninger's involvement. Unlike other claims, the Letter involved a question of privilege — whether the subject statement was made with actual malice. *See Lawson*, ¶ 18. And in any event, for the other claims Winninger and Sports Rehab cite, the court found factual disputes concerning

statements about Winninger directly stealing patient files in 2012, not her involvement in Cimino's 2015 conduct.

¶ 42    Next, they argue that the court relied on text messages between Winninger and Cimino, which Vail Health did not have when it sent the Letter.  By text, Winninger asked Cimino to "email what you took off their servers or any other info you have."  The court found this text "demonstrate[ed] that [Winninger] knew [Cimino] stole the patient files and yet continued to employ him."  We thus conclude that any error in relying on this message was harmless.  *See* C.R.C.P. 61.  The texts that Vail Health *did* have when it sent the Letter, which the court also considered, similarly suggested that Winninger knew of Cimino's conduct and continued to employ him.  Namely, in reference to Cimino, Winninger texted a Vail Health employee, "You know as well as I do that everyone who leaves takes their files and protocols off the drive."

¶ 43    Winninger and Sports Rehab contend that the court erred by failing to explain how Winninger's text stating that "everyone who leaves takes their files and protocols off the drive" was evidence of criminal theft, as alleged in the Letter.  Their argument suggests that the question before the court was whether it was substantially

true that downloading files from the drive amounted to criminal theft, but the court's inquiry with respect to the Letter related to actual malice (i.e., whether Vail Health acted with actual malice by implicating Winninger in Cimino's conduct), not substantial truth. They also contend that the court's denial of summary judgment on a different defamation claim meant that "[t]he court inferred Winninger did not 'steal' any Vail Health files," so it necessarily "infer[ed] that the statements to the police were false." But the Letter did not state that Winninger stole Vail Health's files, and the 2019 Order did not consider substantial truth; it denied summary judgment on other claims based on the existence of disputed facts. And the existence of disputed facts with respect to whether Winninger took files does not mean that the court necessarily inferred that the statements in the Letter were false.

¶ 44 Winninger and Sports Rehab also suggest that the court erred by not considering statements in Winninger's declaration that she texted Cimino to find out what information he downloaded and swore "she was not involved in his purported theft." But the Response did not cite this part of Winninger's declaration. *See McDonald*, ¶¶ 61, 85. That the declaration was attached to the

24

Response is insufficient; it was not the court's duty to sift through exhibits to extract arguments on the parties' behalf. *See id.* at ¶ 61; *Gravina,* ¶ 71. Moreover, Winninger's 2019 declaration was immaterial to whether statements in the 2016 Letter were made with actual malice.

¶ 45 Finally, Winninger and Sports Rehab argue that the court's actual malice finding was erroneous because the Letter asserted that Vail Health "kn[ew] . . . Winninger ha[d] been actively involved in [Cimino's] behavior," while Kirchner testified that, when the Letter was sent, she "did not know [whether] Winninger had been involved" because Vail Health was "still trying to determine that." As discussed, the district court reviewed this evidence and concluded that Vail Health's continued investigation did not demonstrate the existence of disputed facts as to actual malice. We agree.

¶ 46 Whether Vail Health actually *knew* that Winninger was involved in Cimino's conduct was not a question the district court

needed to resolve.[3]  Rather, it had to determine if there was a factual dispute about whether Vail Health made the statement with reckless disregard such that it had "serious doubts" about the statement's truth or "a high degree of awareness of its probable falsity." *Coomer*, ¶ 147 (citation omitted).  When Vail Health sent the Letter, it knew Cimino worked for Sports Rehab, it had evidence that Cimino started working for Sports Rehab before he left Howard Head, it knew Cimino took files from Howard Head and accessed them while he was working for Sports Rehab, and it knew Winninger was aware that Cimino took files.

¶ 47    From this evidence, the district court properly concluded that Vail Health and Kirchner met their initial burden and that the burden then shifted to Winninger and Sports Rehab to show disputed facts concerning actual malice.  *See McDonald*, ¶ 46.  And, as explained below, the court properly held that they did not meet this burden.

---

[3] We reject Vail Health's argument that "nothing in the . . . Letter connects Winninger to Cimino's taking of patient files" because we "resolve 'all doubts' in favor of the nonmoving party," *Univ. of Denver v. Doe*, 2024 CO 27, ¶ 8 (citation omitted).

¶ 48    We next turn to their argument that the court ignored evidence of (1) serious doubts; (2) a grossly inadequate investigation; and (3) fabrication.[4]  We do not consider the argument about an inadequate investigation because Winninger and Sports Rehab did not raise it in the Response, nor do they point us to whether or where they raised this argument to the district court.  *See Valentine*, 252 P.3d at 1188 n.4.  We consider their contentions about serious doubts and fabrication only within the context of the arguments they presented to the district court.  *See McDonald*, ¶ 85.

¶ 49    As to evidence of serious doubts, Winninger and Sports Rehab first cite Cimino's declaration that he did not transfer the data that he took to anyone else.  We do not consider this evidence because the Response did not cite this statement or any other part of Cimino's declaration.  *See Valentine*, 252 P.3d at 1188 n.4.  Next, they cite Kirshner's deposition testimony that she did not "believe any of us kn[e]w whether Winninger was involved in the theft of

---

[4] We do not address Winninger and Sports Rehab's argument about a former Vail Health employee's 2024 trial testimony, which was not before the district court in 2019.  *See McDonald v. Zions First Nat'l Bank, N.A.*, 2015 COA 29, ¶¶ 61, 85.

27

patient files" and Shannon's testimony that he never said Winninger "stole documents from us." They also cite Vail Health and Kirchner's admission that "there [was] no evidence that [Winninger] was ever investigated or charged with a crime." We disagree that this evidence proves serious doubts. Kirchner's testimony is substantively identical to her testimony analyzed above. Shannon's testimony about his own statement is irrelevant to the statements in the Letter. And whether Winninger was investigated or criminally charged after Vail Health sent the Letter has no bearing on whether the Letter's statements were made with actual malice.

¶ 50    Finally, Winninger and Sports Rehab argue that the court ignored evidence that Vail Health fabricated evidence. Their Response generally raised this argument but not in connection with the Letter. The motion for summary judgment stated that, "Cimino emailed Winninger a protocol with a Howard Head logo . . . , and Winninger advised him to modify the stolen document to make it look like a [Sports Rehab] document." And it cited an email that said, "Feel free to throw the biz logo on there. Company colors are Black, silver, orange, white." But the email contained no attachment. While the motion may have misrepresented the nature

of the email, there was no evidence that Vail Health fabricated evidence. Asserting an unsupported argument is not evidence of fabrication, let alone proof of actual malice.

¶ 51    Considering all the circumstances, we conclude that the district court did not err by finding no disputed facts with respect to whether Vail Health made the statements in the Letter with actual malice. *See McDonald*, ¶¶ 45-46; *Lawson*, ¶ 18. Vail Health obtained evidence from which it could reasonably infer that Winninger was involved in Cimino's 2015 conduct, and Winninger and Sports Rehab did not provide evidence in their Response that created a factual dispute about whether Vail Health knew the statement was false, *see Lawson*, ¶ 18, entertained serious doubts about its truth, or "act[ed] with a high degree of awareness" that the statement was probably false, *Coomer*, ¶ 147. Indeed, the Response admitted that Winninger and Sports Rehab had not proved actual malice. Therefore, the district court did not err by granting summary judgment on the claim involving the Letter.

### 3.    DORA Letter Statements

¶ 52    As discussed, one of Winninger and Sports Rehab's defamation claims involved statements in a letter that Vail Health

29

sent in response to a DORA subpoena (the DORA Letter). Vail Health and Kirchner's motion for summary judgment argued that the statements were absolutely privileged and therefore could not form the basis for a defamation claim. The district court agreed, granting summary judgment in Vail Health and Kirchner's favor.

¶ 53 On appeal, Winninger and Sports Rehab argue that the court erred by applying common law absolute immunity principles, rather than statutory qualified immunity. Vail Health and Kirchner contend that Winninger and Sports Rehab did not preserve this argument for appeal. We agree the issue is unpreserved.

¶ 54 With respect to the DORA letter, the Response made no argument about the difference between common law absolute immunity and statutory qualified immunity. *See Belinda A. Begley & Robert K. Hirsch Revocable Tr. v. Ireson*, 2020 COA 157, ¶ 19 (failing to "raise [an] issue in connection with the motions for summary judgment" waives the issue on appeal). Indeed, the opening brief acknowledges that "the [district] court and the parties did not cite this governing statutory [qualified immunity] provision." Instead, the Response argued that Vail Health and Kirchner failed to investigate the "background and genesis of the DORA letter" and

that someone associated with Vail Health "planted" an anonymous complaint with DORA to trigger an investigation. Pertaining to the DORA Letter, the Response cited no legal authority, nor did it refute that the statements therein were privileged.

¶ 55 Because Winninger and Sports Rehab did not present to the district court the argument now raised on appeal, the argument is unpreserved. *See Gebert v. Sears, Roebuck & Co.*, 2023 COA 107, ¶ 25 ("[P]reserving an argument" requires "present[ing] 'the sum and substance of the argument' to the district court.") (citation omitted). We also reject Winninger and Sports Rehab's argument that preservation is effectively unnecessary because we must "resolve issues by identifying and applying the correct law." *People v. Fortson*, 2018 COA 46M, ¶ 17 (considering a statute not expressly cited by the parties); *McLellan v. Colo. Dep't of Hum. Servs.*, 2022 COA 7, ¶ 19 n.2 (considering a regulatory definition the parties failed to raise because courts have "independent power to identify and apply the proper construction of governing law" (quoting *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991))).

¶ 56 These cases do not suggest that we must ignore preservation principles. Rather, we may independently "identify and apply the

31

proper construction of governing law" only if "an issue or claim is *properly before the court." Kamen*, 500 U.S. at 99 (emphasis added). For example, in *McLellan*, ¶ 19 n.2, the parties generally raised an argument concerning the interpretation of a particular regulation but failed to cite a definition the court considered. However, the parties raised "the sum and substance of the argument," *Gerbert*, ¶ 25 (citation omitted), so the issue was "properly before the court," *Kamen*, 500 U.S. at 99. Here, Winninger and Sports Rehab never addressed whether the statements in the DORA Letter were privileged, let alone which type of privilege should apply. Because this argument is unpreserved, we do not reach its merits. *See Gerbert*, ¶ 25.

### 4. Draft Complaint Statements

¶ 57 Winninger and Sports Rehab next argue that the court erred by granting summary judgment for allegedly defamatory statements in Vail Health's Draft Complaint. Specifically, they argue that the court erred by finding that the Draft Complaint was privileged because Vail Health contemplated prospective litigation in good faith. We conclude that the court did not err.

¶ 58    Winninger and Sports Rehab alleged that Kirchner and Shannon showed the unfiled Draft Complaint, containing the allegedly defamatory statements, to Steadman Clinic representatives.  In their summary judgment motion, Vail Health and Kirchner argued that the Draft Complaint was privileged because it related to prospective litigation contemplated in good faith.  To demonstrate good faith, they argued that the Draft Complaint's claims were essentially the same as the counterclaims Vail Health later pursued.  The court held that Vail Health and Kirchner met their burden, and the burden shifted to Sports Rehab and Winninger, who "fail[ed] to proffer evidence . . . that [the] [D]raft [C]omplaint was not contemplated in good faith."

¶ 59    The court considered Winninger and Sports Rehab's arguments that Vail Health and Kirchner acted in bad faith because they wanted to "scare [Winninger and Sports Rehab] off" and wanted them "out of the picture."  It found these arguments "conclusory and without merit," concluded that Winninger and Sports Rehab did not meet their burden of "establishing a genuine issue of material fact as to . . . bad faith," and granted summary judgment.

¶ 60    Winninger and Sports Rehab now challenge this determination.  Vail Health and Kirchner argue that Winninger and Sports Rehab did not preserve this argument.  While we conclude that the argument was generally preserved, we consider only the evidence and facts presented to the district court.  *See McDonald,* ¶ 85.

¶ 61    In reviewing the district court's grant of summary judgment, we apply the same law discussed *supra* Part III.A.  And "[t]he applicability of the [pre]litigation privilege is a question of law that we review de novo."  *Coomer,* ¶ 188.  However, the prelitigation privilege differs slightly from the privilege applicable to the Letter.  "[A] qualified litigation privilege applies to statements made as part of the initiation of litigation."  *Begley v. Ireson,* 2017 COA 3, ¶ 14.  This privilege applies to prelitigation statements "(1) related to prospective litigation [when] (2) the prospective litigation is contemplated in good faith."  *Id.* at ¶ 17 (characterizing the privilege as "absolute or qualified is beside the point").

¶ 62    Citing *Belinda A. Begley & Robert K. Hirsch Revocable Trust,* ¶ 44, Winninger and Sports Rehab argue that summary judgment was inappropriate.  We disagree.  As in that case, which affirmed

the district court's grant of summary judgment on the same grounds, we conclude that there was sufficient evidence for the district court to evaluate good faith on summary judgment. *See id.* at ¶¶ 46-48.

¶ 63    We next consider Winninger and Sports Rehab's contention that the court erred by concluding that Vail Health and Kirchner met their initial burden of proving good faith. Winninger and Sports Rehab argue that the mere filing of the counterclaims was insufficient evidence of good faith.

¶ 64    In support of this contention, they point to a division of this court's rejection of the argument "that the filing of [a] lawsuit . . . is enough, standing alone, to establish that [a party] contemplated the litigation in good faith." *Id.* at ¶ 43. They contend that Vail Health and Kirchner relied solely on the fact that they filed counterclaims to establish good faith, which the district court improperly accepted.

¶ 65    As the division explained, commencing litigation or filing claims is but one factor in the good faith analysis; it is not dispositive of good faith. *See id.* at ¶43. It then considered other evidence of good faith, including the party's "timing and purpose"

for retaining counsel, their attempts to settle the matter, and "a draft complaint in substantially the same form as the one he later filed." *Id.* at ¶ 45. The division concluded that this was sufficient evidence of good faith to shift the burden to the nonmovant. *Id.* at ¶¶ 46-47.

¶ 66 Here, Vail Health argued to the district court that it contemplated the litigation in good faith because (1) it filed counterclaims; (2) the counterclaims were very similar to those raised in the Draft Complaint, (3) it had been actively litigating the counterclaims "for nearly two years," and (4) Vail Health's board of directors retained and authorized counsel to draft the complaint. This evidence was sufficient to shift the burden to Winninger and Sports Rehab to present some evidence of bad faith. *See id.*

¶ 67 Winninger and Sports Rehab next argue that Vail Health and Kirchner "submitted no affidavits attacking the bad faith motives [alleged] in" the FAC. As support, they cite a decision reversing summary judgment because the affidavits supporting a motion for summary judgment did not prove the absence of disputed facts. *See Ginter v. Palmer & Co.*, 585 P.2d 583, 585 (Colo. 1978). This does not mean that a movant must submit affidavits attacking the

complaint's allegations; it merely provides that summary judgment is improper if the movant does not meet its initial burden. *Id.*; *McDonald*, ¶ 46. And the court properly found that Vail Health and Kirchner met their initial burden.

¶ 68    Finally, Winninger and Sports Rehab contend that the district court failed to consider evidence of bad faith. At the outset, we note that their Response effectively conceded that they had not presented sufficient evidence of bad faith. And the Response included only conclusory allegations of bad faith, without citation or support, that Vail Health and Kirchner "never seriously intended to file" the Draft Complaint and merely wanted to prevent Winninger and Sports Rehab from competing with Vail Health.

¶ 69    Their main support for this contention was that they "pleaded that the Draft Complaint was merely a sham designed to ruin the reputation of Winninger and Sports Rehab." As explained, allegations in a complaint are insufficient, alone, to "show[] a genuine issue of material fact." *McDonald*, ¶ 61 (citation omitted). Winninger and Sports Rehab also contend that there was evidence of bad faith because Vail Health waited a significant amount of time after Cimino returned the files to write the Draft Complaint, and

Vail Health sent a cease and desist letter. We are not persuaded. Without more, a mere delay in drafting a complaint does not suggest bad faith. The delay alone does not prove an attempt to "destroy [Winninger's and Sports Rehab's] relationship with Steadman and quash competition."

¶ 70 We also reject Winninger and Sports Rehab's argument that Vail Health and Kirchner acted in bad faith because, when Kirchner showed the Draft Complaint to Steadman employees, she "still did not know if the allegations were true." *See Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 335 F.3d 1161, 1166 (10th Cir. 2003) (considering a similar good faith standard and noting that "a good faith belief in the truth of the communication" is unnecessary) (citation omitted). Finally, we do not consider Winninger and Sports Rehab's exhibit from the 2024 trial, as it was not before the district court in 2019. *See McDonald*, ¶ 85.

¶ 71 In sum, we conclude that the district court did not err by granting summary judgment concerning the statements in the Draft Complaint because, when the burden shifted to Winninger and Sports Rehab, they failed to "establish . . . a triable issue of fact," *McDonald*, ¶ 46 (citation omitted), as to whether Vail Health and

Kirchner contemplated prospective litigation in good faith, *see Begley*, ¶ 17.

### 5. Kirchner's Summary Judgment

¶ 72    Next, Winninger and Sports Rehab argue that the district court erred by dismissing the defamation claims against Kirchner in the 2019 Order for statements made by others when Kirchner "was involved in, sanctioned, or directed" them. The court found that Kirchner was not liable for the actions of Vail Health's employees and agents. And while Winninger and Sports Rehab alleged that Kirchner "participated directly" — because Kirchner knew Winninger hired Cimino, was aware of Cimino's contract with Vail Health, and approved the letter to Vail police — the court found that these general actions were corporate activities and did not establish personal liability. As a result, the court dismissed the claims asserted against Kirchner individually.

¶ 73    On appeal Winninger and Sports Rehab argue the court erred by relying on *Meyer v. Holley*, 537 U.S. 280 (2003), rather than Colorado law, and that disputed facts existed concerning Kirchner's involvement in the third-party statements. Kirchner responds that no evidence was presented to the district court purporting to show

that she was directly involved in making, or authorizing others to make, defamatory statements, and therefore summary judgment was appropriate.

¶ 74 In reviewing the district court's grant of summary judgment, we apply the same law discussed *supra* Part III.A. Further, "[t]o be found personally liable to third persons for a tort, the officer of a corporation must have participated in the tort." *Hoang v. Arbess*, 80 P.3d 863, 868 (Colo. App. 2003). The exact degree of participation required can vary, but, "[a]t a minimum, personal liability attaches to a defendant who was directly involved in the conduct through conception or authorization." *Id.* Other sufficient involvement can include "active participation or cooperation, specific direction, or sanction of the conduct." *Id.* Whether a corporate officer "approved of, directed, actively participated in, or cooperated" in the tort is a question of fact. *Id.*

¶ 75 The court's 2019 Order dismissed claims 4-8, 10, 12-18, 20, and 23-24 entirely. It dismissed claims 6-16 and 18-24, involving statements made by others, as against Kirchner individually. Of the dismissed claims against Kirchner, the district court concluded that, despite the existence of factual disputes in claims 9, 11, 19,

and 21-22, Kirchner could not be held liable for allegedly defamatory statements that she did not make. Accordingly, we consider only the latter claims, since, with respect to the entirely dismissed claims involving others' statements, the court found no disputed material facts and, therefore, that those claims failed as a matter of law. And we have already concluded that the various claims asserted against Kirchner based on the Letter, the DORA Letter, and the Draft Complaint, also failed.

¶ 76    Claims 9, 11, and 19 focused on alleged statements Shannon made to Dan Drawbaugh (the Steadman Clinic's CEO) — in the summer of 2016, December 2016, and January 2017 — that "Winninger had stolen thousands of patient files from Vail Health." Claim 21 involved allegations that, in February 2017, Shannon spoke to "Al Perkins . . . of the Steadman Philippon Research Institute, and told him that Winninger had stolen 3,000 patient files from Vail Health." Finally, claim 22 alleged that, "[i]n about January or February 2017, Nicholas Brown spoke to Kelly Adair of [t]he Steadman Clinic and stated that Winninger was involved in stealing patient files from Vail Health."

¶ 77     Winninger and Sports Rehab's Response highlighted portions of Kirchner's deposition testimony that alleged to show her involvement in the defamatory statements — but none of them related to the statements attributed to Shannon and Brown highlighted above.  For example, they note that "Kirchner knew of and monitored Winninger and Sports Rehab's taking out a lease in the Four Season's hotel"; that she "read and was aware of Cimino's employment agreement with Vail Health"; and that she "carefully reviewed, approved and authorized the defamatory letter that Vail Health's attorney sent to" Vail police.  But these general statements do not establish that a genuine dispute of fact existed concerning whether Kirchner directed, authorized, or participated in the alleged defamatory statements made by Shannon and Brown.  *See McDonald*, ¶ 61.

¶ 78     Further, Winninger and Sports Rehab's factual support offered on appeal — primarily portions of Kirchner's and Drawbaugh's depositions — does not demonstrate Kirchner's direct involvement in allegedly defamatory statements.  Kirchner testified that she reviewed the Letter, authorized the Draft Complaint, and showed the Draft Complaint to Drawbaugh, but little else speaks to her

42

direct involvement or participation in the alleged defamatory statements made by others. Winninger and Sports Rehab relied solely on this deposition testimony for factual support in their Response.

¶ 79 As for Drawbaugh's deposition, he testified that he learned from Kirchner that Winninger "could have been involved" in the theft of patient files around January 2016 but believed the matter was still being investigated. He also confirmed that Kirchner showed him the Draft Complaint around January 2017. Drawbaugh also vaguely testified that sometime before August 2016 Kirchner "indicated that [Winninger] was involved in the theft." But he never said that Kirchner participated in or directed defamatory statements made by others.

¶ 80 Winninger and Sports Rehab's reply brief contends that the FAC's allegations satisfied their burden because Kirchner failed to rebut them with affidavits or other proof, much like their argument concerning the unfiled Draft Complaint as discussed *supra* Part III.B.4. *See Ginter*, 585 P.2d at 585. Acknowledging Kirchner's assertion that corporate officers cannot be held liable for the conduct of the corporation's employees, Winninger and Sports

43

Rehab contend that this argument was insufficient to rebut the FAC's allegations and merit summary judgment. Setting aside that this is a different argument than that raised in the opening brief, *see Battle N., LLC v. Sensible Hous. Co.*, 2015 COA 83, ¶ 41 (we do not consider arguments raised for the first time in a reply brief), Kirchner's argument was that she could not be held liable for the statements based solely on her employment as Vail Health's CEO. And, as discussed, the previously mentioned depositions (and other materials properly before the court) support the contention that Kirchner was not directly involved in the statements made by others. Conversely, Winninger and Sports Rehab's exhibits and depositions do not convey any genuine dispute of material fact on this point. Therefore, without evidence of Kirchner's involvement or participation, she could not, as a matter of law, be held personally liable for the allegedly defamatory statements she did not make; thus, summary judgment was appropriate. *See Arbess*, 80 P.3d at 868; *see also Brown v. Silvern*, 45 P.3d 749, 751 (Colo. App. 2001) ("[S]ummary judgment is proper only when the pleadings, affidavits, depositions, or admissions show that there is no genuine issue as

to any material fact and that the moving party is entitled to judgment as a matter of law.").

## C.   Shannon and Brown's Costs Award

¶ 81    In the SAC, Winninger and Sports Rehab sought to add Shannon and Brown as parties.  However, the court rejected the SAC, so Shannon and Brown were not parties as of May 28, 2019.  Nonetheless, in August 2019, Shannon and Brown moved to be dismissed as parties, which the district court granted.  Shannon and Brown later requested costs pursuant to section 13-16-107, C.R.S. 2024, which the court also granted.  Winninger and Sports Rehab contend that this award was erroneous because Shannon and Brown were never parties and therefore could not be dismissed from the case.  We agree that the costs award was erroneous.

¶ 82    We review a district court's decision to award costs for an abuse of discretion.  *Anderson v. Pursell*, 244 P.3d 1188, 1193 (Colo. 2010).  "A [district] court abuses its discretion when its ruling is 'manifestly arbitrary, unreasonable, or unfair,' or when it misapplies the law."  *Rains v. Barber*, 2018 CO 61, ¶ 8 (citation omitted).  Section 13-16-107 provides that, "[i]f, in any action, judgment upon motion to dismiss by either party . . . is given

45

against the plaintiff, the defendant shall recover costs against the plaintiff."

¶ 83    Shannon and Brown contend that they are entitled to costs under this section because they became parties when the district court initially accepted the SAC. We agree that Shannon and Brown were parties from March 22, 2019, when the SAC was filed, until May 28, 2019, when the court rejected the SAC. However, the court's May 28 order effectively removed Shannon and Brown as parties by rendering the SAC (and any claims against Shannon and Brown) inoperative. *See Laleh v. Johnson*, 2016 COA 4, ¶ 50 ("[Defendant] Tabrizi was dismissed as a party . . . as a part of the trial court's February 2014 order which dismissed with prejudice all claims."), *aff'd*, 2017 CO 93.

¶ 84    Therefore, when Shannon and Brown moved for their dismissal from the case in August 2019, they were no longer parties. But the district court did not consider that fact when it granted their motion to dismiss or when it awarded them costs. Instead, the court noted that the parties' status report failed to assert any claims against Shannon or Brown. However, Winninger and Sports Rehab could not assert such claim because the court

rejected the SAC. Thus, the court incorrectly determined that Winninger and Sports Rehab voluntarily dismissed Shannon and Brown by failing to include claims against them in the status report.

¶ 85 Because Shannon and Brown had already been dismissed by the court's order rescinding its grant of leave to file the SAC, Shannon and Brown's subsequent motion to dismiss was unnecessary and inconsequential. *See* § 13-16-107. Moreover, Shannon and Brown were not prevailing parties because they did not "prevail[] on a significant issue in the litigation [or] derive[] . . . benefits sought by the litigation." *Gonzales v. Windlan*, 2014 COA 176, ¶ 50; *see also Scott v. Scott*, 2018 COA 25, ¶ 62 (concluding that a party was not entitled to costs under section 13-16-107 because she was no longer a prevailing party).

¶ 86 Accordingly, we conclude that the district court abused its discretion by awarding costs to Shannon and Brown, and we vacate the cost award. *See Scott*, ¶ 63.

### D. The 2021 Order

¶ 87 Winninger and Sports Rehab next argue that the district court erred by granting summary judgment in Vail Health and Kirchner's

favor in November 2021, which dismissed the remaining defamation and tortious interference claims. In the 2021 Order, the eight remaining defamation claims were based on a statement that Winninger "kn[ew] about and participated in downloading Vail Health patient files," a statement that she "was involved in stealing patient files," and different variations of statements that Winninger stole Vail Health's patient files.

¶ 88    Because, by then, there was evidence that when Winninger left Howard Head in 2012, she retained company files, Vail Health and Kirchner asserted the statements were substantially true as a defense to the defamation claims. Winninger and Sports Rehab argued that the files belonged to a third party, Rehabilitation & Performance Center at Vail, LLC (RPC), not Vail Health. However, a services agreement between RPC and Vail Health provided that all patients treated at Howard Head were considered Vail Health patients. Therefore, the court concluded that "the patient files at issue c[ould] properly be considered as 'Vail Health patient files' or those 'from Vail Health.'"

¶ 89    Next the district court considered whether the statements that Winninger stole patient files were substantially true. Looking to the

common meaning of the word, it used the dictionary definition of "steal": "to take or appropriate without right or leave and with intent to keep or make use of wrongfully." Merriam-Webster Dictionary, https://perma.cc/H4AV-XPGX. The court noted that it was "undisputed that when Winninger left . . . Howard Head in 2012, she downloaded her personal folder from the shared drive, copied it onto her USB drive," and, as a result, retained some files that contained PHI. It also cited Winninger's deposition testimony admitting "that the contents of her personal folder were not hers."

¶ 90    The court then considered Winninger and Sports Rehab's argument that Winninger believed she was allowed to take the files, but it ultimately concluded that there was no evidence "that Winninger had the right or leave to take PHI." It also concluded that there was no dispute as to whether Winninger intended to keep the files because she downloaded them onto a USB drive that she took with her when she left Howard Head. Therefore, the court concluded that the statements that Winninger stole patient files from Vail Health were substantially true. Based on this conclusion, it also found the statements that Winninger knew about,

participated in, and was involved in stealing the files were substantially true.

¶ 91    On appeal, Winninger and Sports Rehab contend that (1) the court erred by finding it was substantially true that Winninger stole Vail Health's files, adding that the defamatory statements originally related to Cimino's 2015 conduct and that the court erroneously considered Winninger's 2012 conduct (which, as mentioned, was not discovered until *after* the 2019 Order issued); and (2) the 2024 jury verdict extinguished the 2021 Order.

### 1.    Preservation

¶ 92    Vail Health and Kirchner[5] note that, while Winninger and Sports Rehab generally opposed the substantial truth defense, they did not preserve the argument that the district court erred by considering Winninger's 2012 conduct.  Vail Health and Kirchner also contend the argument that the 2024 verdict extinguished the 2021 Order was not preserved because Winninger and Sports

---

[5] Although the answer brief lists Kirchner, Shannon, and Brown as appellees, Shannon and Brown were parties to the case only briefly, as discussed in more detail *supra* Part III.C.  Therefore, we primarily attribute the answer brief's arguments solely to Kirchner.

Rehab failed to seek modification of the 2021 Order before the jury rendered its verdict.

¶ 93 While the court's consideration of Winninger's 2012 conduct is not the primary focus of Winninger and Sports Rehab's appeal of the 2021 Order, their contention is that it affected the substantial truth of the statements. We conclude that Winninger and Sports Rehab did not preserve the argument that the court's 2021 Order improperly considered Winninger's 2012 conduct. Winninger and Sports Rehab's opening brief fails to include citations pointing to where in the record this argument was brought to the district court's attention. *See Franklin D. Azar & Assocs. P.C. v. Ngo*, 2024 COA 99, ¶ 51 ("Generally, to preserve an issue for appeal, the issue must be brought to the trial court's attention and the court must be given the opportunity to rule on it."); *see also Valentine*, 252 P.3d at 1188 n.4. Winninger and Sports Rehab's original and revised responses opposing summary judgment never raised this issue, despite explicitly discussing Winninger's 2012 conduct. And in the reply brief Winninger and Sports Rehab also fail to identify where they preserved the issue, instead directing us to over 2,000 pages of the record and the entire revised response opposing summary

judgment along with its exhibits. *See* C.A.R. 28(a)(7)(A) (Opening briefs must indicate "whether the issue was preserved, and if preserved, the *precise* location in the record where the issue was raised and where the court ruled.") (emphasis added); *see also Black v. Black*, 2018 COA 7, ¶ 67. Such general assertions are insufficient to demonstrate preservation, nor will we scour the record to verify whether this issue was preserved elsewhere. *See* C.A.R. 28(a)(7)(A); *see also Black*, ¶ 67. Therefore, we do not reach the merits of this contention.

¶ 94 Whether Winninger and Sports Rehab failed to preserve the argument that the 2024 verdict extinguished the 2021 Order because they never sought to amend it is a different question. Neither the parties nor the court moved to certify the 2021 Order as final pursuant to C.R.C.P. 54(b). Thus, because there were still unresolved counterclaims, the 2021 Order could not be appealed and could be revised "at any time before the entry of judgment." C.R.C.P. 54(b); *see also Musick v. Woznicki*, 136 P.3d 244, 246 (Colo. 2006) ("[A] trial court ruling that is subject to C.R.C.P. 54(b) certification but is not yet certified" is not "a final judgment for the purposes of appeal."). We reject the argument that a motion for

reconsideration or a C.R.C.P. 59 motion is a precondition to seeking appellate review of a final judgment. *See* C.R.C.P. 59(b) ("Filing of a motion for post-trial relief shall not be a condition precedent to appeal or cross-appeal, nor shall filing of such motion limit the issues that may be raised on appeal."); *cf. Morales v. Golston*, 141 P.3d 901, 905 (Colo. App. 2005) (A party need not "object to the inconsistencies in a jury's answers to a special verdict before the jury is discharged in order to . . . challenge the inconsistencies in a subsequent motion or on appeal.").

2. Whether the 2024 Verdict Extinguished the 2021 Order and Substantial Truth

¶ 95 Winninger and Sports Rehab ask us to vacate the 2021 Order in light of the jury's 2024 verdict. They contend that — because the jury rejected the conversion and misappropriation of trade secret counterclaims — the verdict established that it was not substantially true that Winninger stole Vail Health's patient files. They also contend that the 2021 Order "merged into" and was "extinguished" by the 2024 jury verdict and final judgment.

¶ 96 Vail Health responds that the verdict and the 2021 Order were not inconsistent because (1) the facts pertinent to the conversion

53

counterclaim differed from those applicable to the defamation claims, and (2) the jury found that Winninger *did* take patient files but merely concluded that Vail Health did not suffer damages as a result. Kirchner adds that it would be inappropriate to set aside the 2021 Order based on a verdict from a proceeding to which she was no longer a party. We first conclude that the 2024 verdict did not affect the 2021 Order because the two judgments do not conflict.

¶ 97 In the 2021 Order, the court determined that there was no genuine dispute that — in 2012 when she left Howard Head — Winninger downloaded files, which included statutorily protected PHI, from Vail Health's shared drive to a USB drive without the right to do so and intended to keep them. Therefore, looking to the dictionary definition of "steal," it found the statements that Winninger "stole" the Vail Health files were substantially true.

¶ 98 By contrast — in the 2024 verdicts — the jury determined, in relevant part, that (1) Winninger did not misappropriate the documents that Cimino took in 2015; (2) Winninger and Cimino did not agree to misappropriate Vail Health's trade secrets; (3) Winninger did interfere with Cimino and Vail Health's contract

54

but that the interference did not cause Vail Health damages; and (4) Winninger took documents from Vail Health's shared drive in 2012 but did not "exercise unauthorized dominion or ownership" over the documents. Moreover, the jury instructions made clear that the counterclaims' allegations related primarily to Cimino's 2015 conduct — a set of allegations discrete from Winninger's 2012 conduct, which, as the court's 2021 Order found, was undisputed. Only the conversion claim was explicitly related to Winninger's 2012 conduct.

¶ 99 Comparing the jury's 2024 verdict with the 2021 Order shows that the two judgments do not necessarily conflict. Indeed, in both instances, the court and the jury found that Winninger took Vail Health's files in 2012. Therefore, the 2024 verdict does not "extinguish" the 2021 Order. Furthermore, the jury's conversion verdict related to an entirely different legal context and applied different legal standards than the 2021 Order. And we cannot presume to know the jury's exact reasoning for reaching its conversion verdict — all we can know for sure is that the jurors agreed that Winninger took the files.

¶ 100    Winninger essentially asks us to conclude that the factual and legal issues presented and decided in the 2021 Order are identical to those resolved by the jury's verdict on the conversion claim. But whether Winninger exercised unauthorized dominion or ownership over the files in the conversion context does not necessarily affect whether it was substantially true that Winninger stole Vail Health's files in the defamation claim context — which, as detailed below, depends on whether an average reader would understand the statements to be substantially true. We therefore decline to disturb the court's 2021 Order because it is not in conflict with the jury's 2024 verdict, and we reject Vail Health's argument that the conversion judgment entered on the 2024 verdict extinguished the grant of summary judgment in the 2021 Order. *Cf. Morales*, 141 P.3d at 906 ("A jury verdict will not be reversed for inconsistency if a reading of the record reveals any basis for the verdict. . . . [I]f there is a view of the case that makes the jury's answers consistent, they must be resolved in that way.").

¶ 101    The court also did not err in finding that the statements alleging that Winninger stole Vail Health's files, when considering the plain meaning of "steal," were substantially true. Winninger

and Sports Rehab contend that there were disputed material facts precluding summary judgment, including those related to the ownership of the files and whether Winninger had the "right, knowledge, and intent to take and keep the files." But the court considered the issue of ownership of the files that Winninger took in 2012 and correctly found that an average or lay reader would understand that Vail Health's files referred to "files created for patients for services rendered in a Vail Health facility." This is particularly true considering the services agreement between RPC and Vail Health providing that all patients treated at Howard Head were considered Vail Health patients. But what mattered for Winninger and Sports Rehab's remaining defamation claims was how an average reader would interpret the statement. *See Fry v. Lee*, 2013 COA 100, ¶¶ 20, 22-23 ("Whether a statement is defamatory is a question of law," but "[s]ubstantial truth is an absolute defense to a defamation claim"; thus, "[i]n determining whether a challenged statement is substantially true, the inquiry should focus on how an average reader would read the statement."). The court was correct to find that there was no material dispute of fact over the ownership of the files preventing summary judgment.

¶ 102    As for Winninger's right, intent, and knowledge when taking the files, the court noted that (while Winninger testified that she believed she could take the files) there was no genuine dispute over the fact that Winninger did *not* have the right to take Vail Health's files, particularly those containing PHI.  The court also correctly found that an average reader would understand that Winninger's downloading files from the shared drive to her USB drive evidenced that she took Vail Health's files with an intent to keep them.  *See id.* This was especially true considering the dictionary definition of "steal" — which does not incorporate a specific knowledge requirement.  *See* Merriam-Webster Dictionary, https://perma.cc/H4AV-XPGX; *see also Fry*, ¶ 30 ("To determine the plain and ordinary meanings of words in the context of defamation claims, Colorado courts commonly and properly rely on lay dictionary definitions.").

¶ 103    As the court explained, the dictionary definition of "steal" only requires that Winninger took the files with an intent to keep them. Therefore, as a matter of law, whether Winninger took the files knowingly was immaterial to determining whether the statements that she stole Vail Health files were substantially true for

defamation purposes.  In sum, the record supports the district court's finding that it was substantially true that Winninger stole files from Vail Health in 2012 by downloading them to a USB drive. A conclusion that, again, the jury did not necessarily disagree with in its 2024 verdict.

¶ 104    As a result, the district court properly disposed of the defamation and ancillary tortious interference claims in the 2021 Order because it was substantially true that Winninger stole Vail Health's files in 2012.

## E.    Appellate Attorney Fees

¶ 105    Kirchner, Shannon, and Brown request appellate attorney fees and costs.  We deny this request.

### 1.    Applicable Law

¶ 106    Courts must award "reasonable attorney fees against any . . . party who has brought . . . . a civil action . . . that the court determines lacked substantial justification." § 13-17-102(2), C.R.S. 2024.  This provision also applies to appeals.  *Id.*  An action lacks substantial justification when it is "substantially frivolous, substantially groundless, or substantially vexatious." § 13-17-102(9)(a).  Appeals may be frivolous as filed or as argued.  *Castillo v.*

*Koppes-Conway*, 148 P.3d 289, 292 (Colo. App. 2006). An appeal is frivolous as filed when the court's judgment "was so plainly correct and the legal authority contrary to [the] appellant's position so clear that there is . . . no appealable issue." *Id.* (citation omitted). An appeal is frivolous as argued when, even if there are genuinely appealable issues, the appellant committed misconduct in arguing the appeal. *Id.*

¶ 107 Additionally, "[s]tandards for determining whether an appeal is frivolous should be directed toward penalizing egregious conduct without deterring a lawyer from vigorously asserting his client's rights." *Good Life Colo., LLC v. WLCO, LLC*, 2025 COA 8M, ¶ 106 (quoting *Mission Denver Co. v. Pierson*, 674 P.2d 363, 365 (Colo. 1984)). And the fact that a party does not prevail does not make an appeal frivolous; "a lawyer may present a supportable argument which is extremely unlikely to prevail on appeal." *Bocian v. Owners Ins. Co.*, 2020 COA 98, ¶ 88 (quoting *Pierson*, 674 P.2d at 365).

¶ 108 When a party requests appellate attorney fees, its principal brief must include a specific request. C.A.R. 39.1. The request must be under a separate heading and "explain the legal and

factual basis for an award of attorney fees." *Id.* Citing this rule, without providing further legal justification, is insufficient. *Id.*

### 2. Analysis

¶ 109 Kirchner, Shannon, and Brown argue that Winninger and Sports Rehab's appeal is frivolous, and therefore, they are entitled to their reasonable appellate attorney fees. They contend that Winninger and Sports Rehab appealed the court's grants of summary judgment for defamation claims when there was "no evidence [that] any such [defamatory] statement was made." They also contend that the appeal is frivolous because more arguments asserted on appeal were unpreserved than preserved.

¶ 110 We first note that Kirchner and Vail Health also requested attorney fees in the district court, arguing that Winninger and Sports Rehab's claims were frivolous. The district court concluded that — while Winninger and Sports Rehab's claims were dismissed — the claims did not "lack[] substantial justification" under section 13-17-102(2) because they were good faith arguments based on Kirchner and Vail Health's conduct. We similarly conclude that, although Winninger and Sports Rehab did not

61

entirely prevail on appeal, this alone does not render the appeal frivolous. *See Bocian*, ¶ 88.

¶ 111　Next, we reject Kirchner and Vail Health's argument that this appeal is frivolous because there was no evidence of the allegedly defamatory statements. None of the issues raised on appeal require us to determine whether there was evidence that the challenged defamatory statements were made. Further, we do not conclude that the legal authority contrary to Winninger and Sports Rehab's arguments on appeal was so clearly contrary to their arguments that there were no truly appealable issues. *See Castillo*, 148 P.3d at 292. We also identify no misconduct on Winninger's or Sports Rehab's part in arguing the appeal. *See id.* We therefore hold the appeal is not frivolous as filed or as argued. *See id.*

¶ 112　Additionally, because we concluded that only one issue on appeal was entirely unpreserved, we also reject Kirchner, Shannon, and Brown's argument that the appeal is frivolous because more arguments were unpreserved than preserved.

¶ 113　Lastly, we turn to the issue of costs. Kirchner, Shannon, and Brown request appellate costs "since [costs] were granted in the district court." While they cite C.A.R. 39.1, they cite no additional

legal justification in their request for costs on appeal. Rather, they cite only to authorities discussing attorney fees awards for frivolous appeals. Therefore, we do not consider their request for appellate costs.

## IV. Vail Health's Cross-Appeal

¶ 114 Vail Health's cross-appeal challenges the district court's refusal to give a jury instruction allegedly relevant to its conversion claim. We first discuss the challenged instruction and then address whether the court properly refused the instruction.

### A. Additional Background

¶ 115 As mentioned, several of Vail Health's counterclaims proceeded to trial in 2024, including the conversion claim against Winninger, individually. Vail Health asked the court to instruct the jury that taking copies of intellectual property (IP) may support a claim for conversion and submitted a proposed instruction. In response to the court's inquiry about the instruction's necessity, Vail Health responded that the instruction was consistent with the law. Winninger's counsel objected, noting that the case law made clear that taking copies of IP does not support a conversion claim.

¶ 116    Vail Health's counsel expressed concerns that, in closing arguments, Vail Health would argue that taking copies of IP supported the conversion claim, Winninger's counsel would argue the opposite, and the jury would be confused.  Winninger's counsel then requested an instruction stating that "taking copies of [IP] may not support a claim for conversion."  The following exchange ensued:

> [Vail Health's Counsel]: I know but Judge Granger . . . already ruled in this case about this particular issue on summary judgement [sic].
>
> [Court]: . . . [T]his is the law of the case. . . .  I don't think this instruction needs to be given.
>
> [Winninger's Counsel]: No, I agree.
>
> [Court]: . . . I don't think that . . . permits you to . . . argue [that] the law in Colorado is that even if everything they say is true, you . . . can't win by taking copies of [IP] . . . .
>
> [Vail Health's Counsel]: Well, then they can't argue that taking copies . . . of [IP] may support a claim.
>
> [Winninger's Counsel]: That's fine as long as we're both on the same page.

Winninger's counsel then argued that there had to be deprivation of property to support a conversion claim and that there had been no

deprivation here because the IP is "digital property [that] can't be deleted." Vail Health's counsel disagreed, arguing, "[N]ot under *Scott v. Scott*. . . . [T]hat is not the law." The discussion concluded as follows:

> [Court]: I don't think this instruction is necessary, but . . . you can argue . . . they didn't exercise dominion . . . [or] control. It was still on their . . . computer. And you could argue they took it — they exercised dominion of control. They downloaded off our . . . computer, they had it. What nobody can say is . . . taking copies of [IP] by law supports a claim of conversion. It's a fact driven issue. And you can't say by law in Colorado, taking copies of [IP] is not enough.
>
> [Vail Health's Counsel]: We're in agreement.
>
> [Court]: It's a conversion claim.

¶ 117   Based on the conversion verdict form, the jury answered that (1) Vail Health owned the documents Winninger took, and (2) Winninger did not exercise unauthorized dominion or ownership over those documents. Vail Health now challenges the jury's conversion verdict on the ground that the court refused to instruct the jury that taking copies of IP supports a conversion claim.

## B. Standard of Review and Applicable Law

¶ 118    District courts have a duty to correctly instruct juries on all matters of law. *People in Interest of J.G.*, 2016 CO 39, ¶ 33; *Martinez v. Cast, LLC*, 2025 COA 32, ¶ 25. We review de novo whether a particular jury instruction correctly stated the law, examining whether the instructions, as a whole, accurately informed the jury of the governing law. *Martinez*, ¶ 25; *J.G.*, ¶ 33. If the instructions properly inform the jury of the law, a district court has broad discretion to determine the form and style of the instructions. *J.G.*, ¶ 33. Therefore, we review a district court's decision to give or reject a particular jury instruction for an abuse of discretion. *Id.* A district court's ruling on jury instructions is an abuse of discretion only when the ruling "results in a misstatement of the law or is manifestly arbitrary, unreasonable, or unfair." *Id.* Instructional error is harmless unless it prejudiced a party's substantial rights. *Martinez*, ¶ 25.

¶ 119    "Conversion is any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another." *Mason v. Farm Credit of S. Colo., ACA*, 2018 CO 46, ¶ 29 (alteration and citation omitted). Colorado conversion law is

consistent with section 222A of the Second Restatement of Torts.

*See* Restatement (Second) of Torts §§ 222A, 228 (Am. L. Inst. 1965);

*Md. Cas. Co. v. Messina*, 874 P.2d 1058, 1065-66 (Colo. 1994). The

intentional exercise of dominion or control over an item must "so

seriously interfere[] with the right of another to control it that the

actor may justly be required to pay the other the full value of the

[item]." *Messina*, 874 P.2d at 1065-66 (quoting Restatement

(Second) of Torts § 222A(1)).

> In determining the seriousness of the
> interference and the justice of requiring the
> actor to pay the full value, the following factors
> are important:
>
> (a) the extent and duration of the actor's
> exercise of dominion or control;
>
> (b) the actor's intent to assert a right in fact
> inconsistent with the other's right of control;
>
> (c) the actor's good faith;
>
> (d) the extent and duration of the resulting
> interference with the other's right of control;
>
> (e) the harm done to the [item];
>
> (f) the inconvenience and expense caused to
> the other.

*Id.* (quoting Restatement (Second) of Torts § 222A(2)(a)-(f)).

"[W]hether the actor's interference with the owner's property is

67

serious enough to constitute a conversion of the property is usually one of degree and is a question for the finder of fact." *Id.* (citation omitted).

## C. Analysis

¶ 120 The referenced exchange between Vail Health's counsel and the court concerning the instruction on copies of IP shows that the parties' counsel agreed with the court's proposed solution. When Winninger's counsel suggested that she should get a contrary instruction, the court offered to allow both parties to argue, as a factual matter, about Winninger taking copies of the IP; they agreed. Vail Health's counsel clearly said, "We're in agreement." So while Vail Health objected before the jury instructions were finalized, *see* C.R.C.P. 51; *Bear Valley Church of Christ v. DeBose,* 928 P.2d 1315, 1330 (Colo. 1996), it followed its objection with agreement to the court's compromise, *see Horton v. Suthers*, 43 P.3d 611, 618-19 (Colo. 2002) (a party may not later complain about an action it asked the trial court to take). *But see Silva v. Wilcox,* 223 P.3d 127, 134 (Colo. App. 2009) (a general objection in the context of parties' continuing dispute after a specific objection was sufficient to allow review).

¶ 121    In any event, even if we concluded that counsel preserved the issue by proffering the rejected instruction, the court committed no reversible error because the jury was properly instructed on the elements of conversion. *See I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 892-93 (Colo. 1986) (when the jury is properly instructed and its findings have record support, those findings are binding on appeal). Instruction Nos. 41 and 42 were consistent with Colorado conversion law.[6] *Underwood v. Dillon Cos.*, 936 P.2d 612, 615 (Colo. App. 1997) (agreeing that although the challenged instructions tracked applicable law, it was not reversible error to

---

[6] Instruction No. 41 read, in relevant part, as follows:

> The conversion claim involves allegations by Vail Health that Lindsay Winninger took certain materials from the Howard Head Sports Medicine shared drive when she left RPC-Vail's employment in spring 2012. For Vail Health to recover from Ms. Winninger on its claim of conversion of personal property, you must find that all the following to have been proved by a preponderance of the evidence: (1) Vail Health owned the documents taken by Ms. Winninger; (2) Ms. Winninger exercised unauthorized dominion or ownership over the documents when she took those documents; and (3) Vail Health did not consent to the interference.

refuse them when the instructions otherwise correctly advised the jury).

¶ 122 Both parties repeatedly asked about what Cimino and Winninger took, what they intended to take, how the documents were used, and the impact it had on Vail Health.

¶ 123 Vail Health's argument on appeal relies heavily on the jury's third question, posed mid-deliberations: "Is 'possession' of a doc 'ownership' in the law in this case? What if the doc is a copy, not an original? Does the definition of possession ownership or [undecipherable]?" The court invited the parties to examine the jury's question, adding, "I almost think we have to give them an unsatisfactory answer to a degree, to let them know that these are the instructions on the law . . . they're pretty good instructions . . . they're complicated. So I think . . . we've got to send some message that 'These are the instructions. Read them.'"

¶ 124 The court next proposed the following written response: "As [s]tated in Instruction Number 15, these instructions contain the law that you must use in deciding this case. We cannot answer factual questions or provide additional legal definitions."

¶ 125    The court further indicated it was willing to modify its proposed response to Jury Question No. 2, concerning the terms "dominion" and "ownership" of documents. As to Jury Question No. 3, Vail Health's counsel specifically responded, "I don't think there is anything else we can do."

¶ 126    Given this record, Vail Health's reliance on Jury Question No. 3 as support for its challenge to the rejected instruction on copies of IP is unavailing. *See Horton*, 43 P.3d at 618-19. When the court answered the jury's question by responding that all the applicable law had been provided and that it could not "answer factual questions or provide additional definitions," neither party objected, and the jury did not ask follow-up questions. *See id.* Accordingly, we conclude the jury had sufficient and correct instructions to render its verdict. *See DuPont v. Preston*, 9 P.3d 1193, 1200 (Colo. App. 2000) (we presume the jury understood and followed the district court's instructions), *aff'd on other grounds*, 35 P.3d 433 (Colo. 2001). The jury's question provided no basis to infer that the lack of an instruction specific to copies of documents, IP, or data drove its conversion verdict. *Cf. Clough v. Williams Prod. RMT Co.*, 179 P.3d 32, 41 (Colo. App. 2007). The jury agreed that

71

Winninger took documents but did not exercise dominion or ownership over them.

¶ 127 Moreover, before the jury even submitted its third question, the court proposed, and the parties agreed, to amend the special verdict form for conversion so that the jury understood that either dominion *or* ownership would suffice (i.e., Winninger did not have to exercise both dominion *and* ownership). The court later appropriately entered judgment on the jury's verdict in favor of Winninger on the conversion claim (and the other claims).

## V. Disposition

¶ 128 We affirm the district court's judgments in part and remand the case with directions to vacate the judgment awarding costs in favor of Shannon and Brown.

JUDGE HARRIS and JUDGE SCHUTZ concur.